IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARQUAN TEETZ as Next Friend and
Personal Representative of the
ESTATE OF CEDRIC LOFTON,
deceased,

                    Plaintiff,

v.                                                   6:22-cv-01134

SEDGWICK COUNTY, KANSAS;
JASON STEPIEN; BRENTON NEWBY;
KAREN CONKLIN; BILLY BUCKNER;
BENNY MENDOZA; CITY OF WICHITA,
KANSAS; and JOHN DOE WICHITA
POLICE DEPARTMENT OFFICERS 1-10,

                    Defendants

**Motion to Dismiss and Memorandum in Support**

      Defendant City of Wichita moves to dismiss Count 14 of the Complaint pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted.

**I. Nature of the Matter**

      This civil action, brought pursuant to 42 U.S.C. § 1983, arises after the death of Cedric Lofton at the Sedgwick County Juvenile Intake and Assessment Center (JIAC). The sole claim against the City of Wichita, Count 14, fails to state a claim upon which relief may be granted. Count 14 and the City of Wichita should be dismissed from this action.

## II. Statement of Facts[1]

The Wichita Police were called to a residence in Wichita with the intention of sercuring a mental health evaluation and treatment for Cedric Lofton. *Doc. 1, ¶¶ 3-4,* The Complaint alleges that, when Wichita Police Department (WPD) officers arrived and encountered Lofton, he showed no signs of violence and presented no harm or danger. *Doc. 1*, ¶ 4. The Complaint further alleges that, while WPD Officers were trying to get Lofton to voluntarily go with them, Lofton "did not present a threat to anyone." *Doc. 1*, ¶ 34.

The Complaint also alleges the scenario escalated and WPD officers arrested Lofton, placed him in a WRAP restraint system, and took Cedric to the Sedgwick County's Juvenile Intake and Assessment Center (JIAC) for detention. *Doc. 1*, ¶ 5. The Complaint does not allege or contend:

1. The arrest of Lofton was without probable cause or that it was unreasonable under the Fourth Amendment,

2. The use of the WRAP restraint by the WPD officers constituted an unreasonable use of force or that the use of the WRAP restraint caused any physical injury to Lofton,

3. That Lofton displayed signs of physical injury or illness (acute or longstanding),

4. That Lofton showed any signs he was impaired due to drugs and/or alcohol,

5. That Lofton made statements or displayed behavior indicating he was likely to cause harm to himself or others, or

6. That any action or inaction by WPD officers, itself, caused physical injury to Lofton.

Rather, the Complaint alleges JIAC officers subjected Lofton to excessive force. *Doc. 1*, ¶¶ 9, 82, 89, 100, 111, 122, 133, and 189.

While the Complaint alleges WPD used JIAC to "punish juveniles with mental health

---

[1] The facts are from the face of the Complaint, *Doc. 1*. The City of Wichita does not admit any of the facts alleged in the Complaint.

{T0475306}                                                        2

issues," Doc. 1, ¶¶ 11, 85(c), 86, and 203, the Complaint alleges no facts to support any conclusion or inference that juveniles were taken by Wichita police officers *without* probable cause to believe the juvenile had committed a crime or was otherwise subject to intake and assessment under the authority of K.S.A. 38-2330 and 75-7023(c).

> The Medical Examiner determined that Cedric [Lofton] died due to "complications of cardiopulmonary arrest sustained after physical struggle while restrained in the prone position." The medical examiner determined the cause of death as "homicide." The medical examiner found that drugs played no role in Cedric's death.

*Doc. 1*, ¶ 74. None of the John Doe police officers and no City of Wichita officer or employee is alleged to have participated in, or were present during, the restraint of Lofton in a prone position.

> The Complaint alleges the following pertaining to City of Wichita policies or practices:
>
> 35. On information and belief, no officer with Crisis Intervention Team (CIT) training was present at, or called to, Cedric's home. See WPD Policy No. 519.

*Doc. 1, ¶ 35*.

> 41. Policy 915 of the Wichita Police Department Policy Manual governs officers' use of the WRAP. That policy provides part that:
>
> > a. The purpose of the WRAP is to "control[] and immobiliz[e] a violent or potentially violent/combative subject who has been detained or taken into custody."
> >
> > b. The WRAP "should be utilized only when less restrictive alternatives would be ineffective in controlling the disorderly behavior" purportedly justifying its use in the first place and "for only the amount of time absolutely necessary."
>
> 42. The policy specifically identifies concerns with respect to using the WRAP in instances of mental health crises. See Policy No. 915.III.C.2 ("For mental health patients, a mental health consultation shall be secured as soon as possible to assess the need for mental health treatment. A subject should not remain in the WRAP Restraint System at a medical facility for more than 30- minutes.").

*Doc. 1*, ¶¶ 41-42.

> 47. Use of the WRAP was unnecessary and unjustified in Cedric's case. WPD officers violated WRAP policy when they forced it on Cedric.

*Doc. 1*, ¶ 47.

> 209. The City of Wichita inadequately trained its police officers such that they were utterly incapable of performing their jobs on September 24, 2021, including by failing to obtain mental health treatment for Cedric Lofton and, in turn, falsifying information relating to his mental state and behavior such that he was admitted to JIAC and not taken for mental health evaluation and treatment.
>
> 210. The City of Wichita has a policy, pattern, and practice of inadequately training its officers to perform the job, including by inadequately training them on dealing with juveniles and those in the throes of a mental health crisis.
>
> 211. The Wichita Police Department has a history of widespread prior abuse and/or a pattern of prior similar incidents which put it on notice of the need to adequately train on the foregoing.
>
> 212. The City of Wichita's failure to adequately train in these respects constituted a deliberate indifference to the constitutional rights of citizens like Cedric Lofton. This is particularly so in the face of the Kansas Department of Corrections Report in 2016 putting WPD on notices of its repeated failures.

*Doc. 1*, ¶¶ 209-212.

The constitutional violations alleged in the complaint are:

1. If JIAC's written policies authorizes the JIAC Defendants' use of force on Cedric Lofton, JIAC's use of force policy is unconstitutional, *Doc. 1*, ¶ 83,

2. JIAC individual defendant Stepien used excessive force and failed to render emergency aid, *id.*, ¶¶ 89, 94 (Count 1),

3. JIAC individual defendant Newby used excessive force and failed to render emergency aid, *id.*, ¶¶ 100, 105 (Count 2),

4. JIAC individual defendant Conklin used excessive force and failed to render emergency aid, *id.*, ¶¶ 111, 116 (Count 3),

5. JIAC individual defendant Buckner used excessive force and failed to render emergency aid, *id.*, ¶¶ 122, 127 (Count 4),

6. JIAC individual defendant Mendoza used excessive force and failed to render emergency aid, *id.*, ¶¶ 133, 138 (Count 5),

7. JIAC individual defendant Stepien failed to intervene in the use of excessive force by other JIAD defendants and failed to intervene and render emergency aid, *id.*, ¶¶ 144, 147 (Count 6),

8.     JIAC individual defendant Newby failed to intervene in the use of excessive force by other JIAD defendants and failed to intervene and render emergency aid, *id.*, ¶¶ 153, 156 (Count 7),

9.     JIAC individual defendant Conklin failed to intervene in the use of excessive force by other JIAD defendants and failed to intervene and render emergency aid, *id.*, ¶¶ 162, 165 (Count 8),

10.     JIAC individual defendant Buckner failed to intervene in the use of excessive force by other JIAD defendants and failed to intervene and render emergency aid, *id.*, ¶¶ 171, 174 (Count 9),

11.     JIAC individual defendant Mendoza failed to intervene in the use of excessive force by other JIAD defendants and failed to intervene and render emergency aid, *id.*, ¶¶ 180, 183 (Count 10),

12.     A *Monell* claim against Sedgwick County for excessive force, *id.*, ¶¶ 189-191 (Count 11),

13.     A *Monell* claim against Sedgwick County for failure to train, *id.*, ¶¶ 189-191 (Count 12),

14.     A claim that John Doe Wichita Police Officers 1-10 were deliberately indifferent to a serious medical need, *id.*, ¶¶ 202-207 (Count 13), specifically,

> [The John Doe officers] knew that if they did not obtain a mental health evaluation and treatment for Cedric Lofton, he would be seriously harmed.

*Id.*, ¶ 217.

15.     A *Monell* claim against the City of Wichita for failure to train, *id.*, ¶¶ 209-215 (Count 14), and

16.     JIAC individual defendants Stepien, Newby, Conklin, Buckner, and Mendoza were deliberately indifferent to a serious medical need, *id.*, ¶¶ 217-233 (Count 15, specifically

> After they had restrained him for a period of time, Defendants recognized that Cedric Lofton was having difficulty breathing and/or maintaining consciousness, or had stopped breathing, and knew that if they did not provide and/or obtain immediate medical attention, he would be seriously harmed.

*Id.*, ¶ 217.

### III. Questions Presented

1. Can Plaintiff's *Monell* claim against the City of Wichita proceed when the Complaint fails to allege facts establishing a violation of Cedric Lofton's constitutional rights by any City officer or employee?

2. Does the sole claim against the City of Wichita (Count 14) fail for: (1) lack of an underlying constitutional violation, (2) lack of a policy that caused a violation of Lofton's constitutional rights, or (3) lack of deliberate indifference to the rights of persons with whom the WPD officers come into contact?

### IV. Argument and Authorities

**A.   Standard for a motion to dismiss under Rule 12(b)(6), failure to state a claim upon which relief may be granted.**

When ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleading standard arising from the decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, requires that a complaint plead facts sufficient to show that the claims have substantive plausibility. This standard emphasizes the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, which instead must be supported by facts. A complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. The Court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679-80. The Court need not accept as true those allegations which state only legal conclusions. *See id.*; *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991).

Allegations amounting merely a conclusion of law, not supported by factual content, are not entitled to presumption of truth. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011). Plaintiffs must frame the complaint with enough factual matter to suggest that they are entitled to relief. Threadbare recitals of a cause of action accompanied by conclusory

statements are not enough. *Twombly*, 550 U.S. at 556. A facially plausible claim exists where the complaint pleads factual content from which the Court can reasonably infer the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. *Id*. (quoting *Twombly*, 550 U.S. at 557).

The court ignores labels, conclusions, and formulaic recitations of the elements of a cause of action. Such naked assertions devoid of further factual enhancement do not suffice and will not stand. *Iqbal*, 556 U.S. at 678; *Kansas Penn Gaming*, 656 F.2d at .1214. Plaintiff must allege facts that make the claim plausible: "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

**B.     Count 14 must be dismissed because (1) the Complaint fails to allege any constitutional violation by a City officer or employee and (2) the City's policies did not authorize or cause a constitutional violation by a City officer or employee.**

A person, including a municipality, is liable under § 1983 only if it "subjects, or causes to be subjected, any … person … to the deprivation of any rights … secured by the Constitution." 42 U.S.C. § 1983. Section 1983 does not permit vicarious liability or *respondeat superior* and a municipality is not liable under § 1983 simply when one of its officers has committed a constitutional violation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Rather, "[i]t is only when the 'execution of the government's policy or custom … inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal citation omitted).

Section 1983 does not subject municipalities to liability absent an official policy that caused a constitutional tort. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at 691). Accordingly, municipalities are liable under § 1983 only for their own illegal acts and "are not vicariously liable under § 1983 for their

employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted). Imposition of municipality liable first requires that a plaintiff prove (1) a violation of the plaintiff's constitutional rights, (2) an official policy, (3) causation between the policy and the constitutional violation and (4) the requisite state of mind—that policy enacted or maintained with deliberate indifference to the risk of that constitutional violation occurring. *Schneider*, 717 F.3d at 769−71. Municipal liability is "most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citation omitted). A municipality's decision not to train its officers rises to the level of an official government policy under § 1983 only when the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. (second alteration in original) (quoting *City of Canton*, 489 U.S. at 388).

> **1.** **The Complaint fails to allege any constitutional violation by a City officer or employee.**

The *Monell* claim against the City of Wichita is predicated on the alleged deliberate indifference by the John Doe officers to an alleged serious medical need of Lofton. *Doc. 1*, ¶¶ 201-207, pp. 33-34 (Count 13). Plaintiff alleges, in Count 13, that the John Doe officers failed to obtain a mental health evaluation and treatment for Lofton and that failure later resulted in Lofton's injury and death—it does not, however, allege the John Doe officers caused the injury or death. With respect to the unidentified, John Doe, WPD officers, the Complaint alleges the officers:

1) responded to a call for service relating to Lofton, *Doc. 1,* ¶ 28,
2) spoke with Lofton, telling him to come with them; *Doc. 1*, ¶¶ 31-34,
3) moved to take Lofton by force, *Doc. 1*, ¶ 36,
4) placed Lofton in a WRAP restraint*, Doc. 1*, ¶¶ 38-39, 44, 46,
5) arrested Lofton, *Doc. 1,* ¶¶ 28, 48,
6) transported Lofton to JIAC, *Doc. 1,* ¶¶ 28, 48, 50-51,

Kansas law permits a law enforcement officer to take a juvenile into custody when "[a]ny offense has been or is being committed in the officer's view." K.S.A. 38-2330(a)(1). JIAC is a juvenile detention facility. *Doc. 1*, ¶ 6, K.S.A. 38-2302(q)

The Complaint alleges the unidentified WPD officers violated the City's policy when using the WRAP restraint system. *Doc. 1*, ¶ 47. The Complaint does not, however, allege the use of the WRAP restraint on a potentially violent arrestee violates the constitution. Nor does the Complaint allege any specific injury sustained by Lofton from the use of the WRAP restraint. Rather, the Complaint alleges Lofton died as a result of homicide and the use of excessive force by JIAC personnel. *Doc. 1*, ¶¶ 9, 22-26, 76-77, 82, 89, 93, 96, 100, 104, 107, 111, 115, 118, 122, 126, 129, 133, 137, 140, 145-146, 154-155, 163-164, 172-173, 181-182 (allegations of excessive force); ¶¶ 10, 74 (medical examiner determined Lofton's death was a homicide), and ¶ 13 (cause of death was homicide at the hands of JIAC personnel).

The Supreme Court recognized a deliberate indifference § 1983 claim under the Eighth Amendment, which protects the rights of convicted prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such a claim by pretrial detainees arises to the claim under the Fourteenth Amendment. *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). The Tenth Circuit applies the same deliberate indifference standard whether the claim arises under the Eight Amendment for convicted prisoners or the Fourteenth Amendment for pretrial detainees. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), *cert. denied*, 142 S. Ct. 312 (2021).

A cognizable claim for deliberate indifference to a serious medical need by a pretrial detainee such as Lofton required that the Plaintiff "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001) (quoting *Estelle*, 429 U.S. at 106)). This standard includes both an objective component and a subjective component. *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). The objective component requires that the alleged deprivation be sufficiently serious to constitute a deprivation of constitutional dimension. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). An

objectively serious medical need (1) a medical need already diagnosed by a physician as mandating treatment or (2) a medical need so obvious that lay persons easily recognize the necessity for a doctor's attention. *Clark*, 895 F.3d at 1267. The subjective component requires Plaintiff to establish that a defendant official knows of and disregards an excessive risk to inmate/detainee's health or safety. That is, the official must both be aware of facts from which allowing the inference a substantial risk of serious harm exists <u>and</u> the official must actually draw the inference. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The objective component requires that the plaintiff show the medical need was "sufficiently serious," that is, the harm suffered rises to a level cognizable under the Cruel and Unusual Punishment Clause. *Mata v. Saiz*, 427 F.3d 752-53. "[I]t is the *harm* claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (emphasis added) (quoting *Mata*, 427 F.3d at 753). A delay in medical care constitutes a constitutional violation only if there has been (1) deliberate indifference which (2) results in substantial harm by further injuring the inmate. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993), and *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).

The Complaint does not set forth any facts from which the John Doe officers might have discerned a serious <u>*medical*</u> need by Lofton. The complaint speaks instead to mental health and mental health evaluation and treatment. Indeed, the Complaint alleges the John Doe officers "knew that if they did not obtain a mental health evaluation and treatment for Cedric Lofton, he would be seriously harmed." *Doc. 1,* ¶ 202. As to the John Doe officers, the Complaint does not identify any "serious medical need" known to the officers, the Complaint instead speak in abstract that Lofton "would be seriously harmed." *Id.*, ¶¶ 202-207. The Complaint does not plausibly allege that the

John Doe officers anticipated Lofton would die by homicide if taken to JIAC.

Claims of deliberate indifference to inmate/detainee mental health require knowledge of a specific risk of harm. Such claims typically involve instances of suicide by the inmate/detainee. *See, e.g.*, *Duran v. Donaldson*, 663 Fed. Appx. 684, 690 (10th Cir. 2016) (affirming dismissal of claim for lack of facts showing knowledge of risk plaintiff might harm himself or another inmate because of any mental health issues). A claim of deliberate indifference to the safety of a prisoner/detainee requires actual knowledge of the specific risk of harm to the detainee. *Estate of Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (knowledge of intoxication and accompanying incoherence does not, by itself, give rise to knowledge of a specific risk of suicide). Placing a pretrial detainee in a detention facility or holding cell rather than furnishing immediate mental-health treatment, in the absence of specific knowledge of a risk of harm to the detainee or others, does not rise to the level of deliberate indifference to a known or obvious risk of harm. *Barrie v. Grand County*, 119 F.3d 862, 869 (10th Cir. 1997) (in the instances of n jail suicide, the custodian must be deliberately indifferent to a substantial risk of suicide); *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015).

The Complaint does not allege that any of the John Doe police officers had knowledge of a specific risk that Lofton would be subjected to excessive force by JIAC personnel, a failure of JIAC personnel to intervene in that use of excessive force, or a failure of JIAC personnel to provide medical aid once the need for medical aid was known.

In sum, the Complaint does not state a claim that any City of Wichita officer or employee violated Lofton's constitutional rights.

> **2.** **The Complaint fails to state a *Monell* claim against the City. The City's policies did not authorize or cause a constitutional violation by a City officer or employee. The City was not deliberately indifferent to the rights of persons who encounter the WPD.**

*Monell* liability requires that a plaintiff prove (1) a violation of the plaintiff's constitutional rights, (2) an official policy, (3) causation between the policy and the constitutional violation and (4) the requisite state of mind—that policy enacted or maintained with deliberate indifference to the risk of that constitutional violation occurring. *Schneider*, 717 F.3d at 769−71.

> **a.** **The complaint fails to state a *Monell* claim against the City as there is no underlying constitutional violation by any City officer or employee.**

There is no *Monell* liability when there was no underlying constitutional violation. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). As discussed in § IV.B.1, *supra*, the Complaint does not state a claim of a constitutional violation by a City officer or employee.

> **b.** **The Complaint does not identify a City policy that caused a constitutional violation nor does the Complaint identify any deliberate indifference to the rights of persons with whom WPD officers come into contact.**

The causation element requires that the challenged policy or practice be closely related to the alleged constitutional deprivation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). For plaintiff's *Monell* claim against the City of Wichita, plaintiff must first show a deprivation of Lofton's constitutional rights caused by a City of Wichita employee or official or one cause by the City directly (without a violation by any officer or employee). Second, plaintiff must also show the deprivation was caused by a policy, custom or practice of the City of Wichita. *Bryan County*, 520 U.S. at 404. Courts apply rigorous standards of culpability and causation "to ensure that the municipality is not held liable solely for the action of its employee." *Id*., at 405. An especially rigorous causation element is applied where the policy or practice itself

is not unconstitutional, i.e., where the *Monell* claim is predicated on alleged inadequate training. *Schneider*, 717 F.3d at 770.

*Monell* liability, can be imposed only where a municipal "policy" or "custom" is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694. An official policy of the City is required under § 1983 to distinguish acts of the municipality from acts its employees. *Schneider*, 717 F.3d at 770 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770.

Plaintiff does allege any of the City's policies are facially unconstitutional. In the absence of a facially unconstitutional municipal policy, a plaintiff may satisfy the state of mind element by showing that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Schneider*, 717 F.3d at 770. Inadequate police training can "serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. A failure to train gives rise to municipal liability under § 1983 only where the failure to train evidences a "deliberate indifference' to the rights of its inhabitants." *Id.*, at 389.

Deliberate indifference is a stringent fault standard that requires proof the municipality disregarded a known or obvious consequence of its action. *Bd. of County Comm'rs of Bryan County, v. Brown*, 520 U.S. 397, 410 (1997). For example, when municipal policymakers have actual or constructive notice that a training deficiency caused municipal employees to commit constitutional violations, the municipality may be deliberately indifferent if it chooses to maintain

its deficient training program. *Connick*, 563 U.S. at 61 (citation omitted). Ordinarily, a plaintiff must prove a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference for purposes a § 1983 claim for failure to train. *Id*. at 62 (citation omitted). "Evidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances … in which the unconstitutional consequences of a failure to train are highly predictable and patently obvious." *Waller v. City & County of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 63−64).

> Plaintiff contends the City of Wichita was deliberately indifferent in the following respects:
>
> 209. The City of Wichita inadequately trained its police officers such that they were utterly incapable of performing their jobs on September 24, 2021, including by failing to obtain mental health treatment for Cedric Lofton and, in turn, falsifying information relating to his mental state and behavior such that he was admitted to JIAC and not taken for mental health evaluation and treatment.
>
> 210. The City of Wichita has a policy, pattern, and practice of inadequately training its officers to perform the job, including by inadequately training them on dealing with juveniles and those in the throes of a mental health crisis.
>
> 211. The Wichita Police Department has a history of widespread prior abuse and/or a pattern of prior similar incidents which put it on notice of the need to adequately train on the foregoing.
>
> 212. The City of Wichita's failure to adequately train in these respects constituted a deliberate indifference to the constitutional rights of citizens like Cedric Lofton. This is particularly so in the face of the Kansas Department of Corrections Report in 2016 putting WPD on notices of its repeated failures.

*Doc. 1*, ¶¶ 209-212 (Count 14). These conclusory, formulaic allegations do not state a claim upon which relief may be granted.

The Complaint does not identify a pre-existing pattern of violations that should have alerted policymakers to a need for additional or different training. This is not one of the in a narrow range of circumstances where a pre-existing pattern of similar violations is unnecessary. The Complaint does not plausibly allege a failure to that train amounts to deliberate indifference to the rights of

persons with whom the police come into contact.

        **c.    The Complaint does not allege facts establishing a causal connection between any City policy or practice (or any act by any City officer or employee) and Lofton's death.**

A *Monell* claim requires causation. That is, there must be a direct causal link between City's policy and the constitutional deprivation. *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1241 (10th Cir. 2020). The plaintiff must show that the alleged municipal policy/practice was closely related to the deprivation of rights such the municipality was the "moving force" behind the alleged constitutional injury. *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022) (quoting *Bryan County*, 520 U.S. at 404).

Taking a lawfully arrested individual to a county detention facility—even by a person in need of mental health treatment—does not violate the constitution. Further, the "failure" to obtain a mental health evaluation and mental health treatment for Lofton was not, itself, a constitutional violation. The use of force by JIAC personnel and Lofton's death were not the reasonably probable consequence of taking a juvenile arrestee to a juvenile detention facility. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir.1990) (discussing causation requirement). Moreover, Lofton's death was not a highly predictable and patently obvious consequence of any alleged failure to obtain a mental health evaluation and mental health treatment or any failure to train City police officers "on dealing with juveniles and those in the throes of a mental health crisis," Doc. 1, ¶ 210. *Waller*, 932 F.3d at 1288.

Plaintiff's claim also fails as a matter of law because it is based only on conclusory statements that should be disregarded pursuant to *Kansas Penn Gaming*, 656 F.3d at 1214. Further, The Complaint does not allege (1) what the constitution requires when state actors "dealing with juveniles and those in the throes of a mental health crisis," (2) how the John Doe Wichita police officers violated the constitution when "dealing" with Lofton, or (3) how the City's policies and

training were deficient in any manner. The Complaint does not allege the City's written policies (519 and 915) authorized or caused any constitutional violation by City officers. Rather, the Complaint alleges WPD officers violated Policy 915, and the Complaint identifies no defect in Policy 519.

In sum, the Complaint fails to state a claim against the City. Count 14 and the City should be dismissed from this action.

## Conclusion

The City of Wichita requests, for the foregoing reasons, that Count 14 be dismissed and that the City be dismissed from this action.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**
David R. Cooper                    #16690
Charles E. Branson                 #17376
**Attorneys for Defendants**

JENNIFER L. MAGAÑA, #15519
City Attorney
SHARON L. DICKGRAFE, #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, Kansas 67202
P: (316) 268-4681 | F: (316) 268-4335
sdickgrafe@wichita.gov
**Attorneys for City of Wichita**

## Certificate of Service

I hereby certify that I electronically filed the foregoing on September 12, 2022, a with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Andrew M. Stroth
Action Injury Law Group, LLC
191 N. Wacker Drive, Suite 2300
Chicago, IL 60606
Tel: 844-878-4529 | Fax: 312-641-6866 | astroth@actioninjurylawgroup.com
PRO HAC VICE ATTORNEY

Steven A. Hart | shart@hmelegal.com
John S. Marrese | jmarrese@hmelegal.com
Max Bungert | mbungert@hmelegal.com
Maurice Rice II | mrice@hmelegal.com
Hart McLaughlin & Eldridge, LLC
22 W. Washington Street, Suite 1600
Chicago, IL 60602
Tel: 312-955-0545
PRO HAC VICE ATTORNEYS

Benjamin A. Stelter-Embry
Protzman Law Firm, LLC
4001 W. 114th Street, Suite 110
Leawood, KS 66211
Tel: 816-421-5100 | Fax: 816-421-5105 | ben@protzmanlaw.com
ATTORNEY FOR PLAINTIFF

Allen G. Glendenning
Jeffrey M. Kuhlman
Watkins Calcara, Chtd.
1321 Main Street, Suite 300
PO Drawer 1110
Great Bend, KS 67530
Attorneys for Defendants Jason Stepien, Brenton Newby, Karen Conklin, Billy Buckner, and Benny Mendoza

Kevin D. Case | kevin.case@caselinden.com
Cory R. Buck | cory.buck@caselinden.com
Case Linden P.C.
2600 Grand Boulevard, Suite 300
Kansas City, MO 64108
Tel: (816) 979-1500
Fax: (816) 979-1501
Attorneys for Defendant Sedgwick County, Kansas

                                                    **s/David R. Cooper**