**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MARQUAN TEETZ, as Next Friend and Personal
Representative of the Estate of Cedric Lofton,

      Plaintiff,

      v.

SEDGWICK COUNTY, KANSAS, et al.,

      Defendants.

Case No. 22-1134-EFM-ADM

## MEMORANDUM AND ORDER

Plaintiff Marquan Teetz, as next friend and personal representative of the Estate of Cedric Lofton, deceased, brings this civil-rights action arising from Lofton's death while in law-enforcement custody. Plaintiff asserts claims against individual officers of the Wichita Police Department ("WPD") and the Sedgwick County Juvenile Intake and Assessment Center ("JIAC"), as well as *Monell* claims against the City of Wichita, Kansas ("the City") and the Board of County Commissioners of Sedgwick County, Kansas ("the County"). This matter now comes before the court on plaintiff's Motion for Leave to File Second Amended Complaint. (ECF 119.) By way of this motion, plaintiff seeks to amend his complaint to add factual allegations, to dismiss two WPD officers from the case, to plead certain claims against WPD officers on an individual basis (rather than as a collective group), to assert excessive-force and failure-to-train claims against the County, to assert failure-to-train and deliberate-indifference claims against the City, and to assert claims under Title II of the Americans with Disabilities Act ("ADA") against both the County and City. No individual officer opposes the motion. The City and the County filed separate responses by which they partly oppose the motion.

1

For the reasons explained further below, the motion is granted in part and denied in part. For all amendments other than the proposed addition of ADA claims, the court concludes plaintiff has established good cause for moving to amend after the deadline set by the scheduling order. The court also concludes that neither the County nor the City has demonstrated the amendments are untimely, unfairly prejudicial, brought in bad faith, or futile. Thus, the court grants plaintiff leave to file his proposed second amended complaint with all but the ADA claims included.

## I.      BACKGROUND[1]

This case arises from Lofton's death while he was detained at the JIAC. In a complaint filed on June 13 and amended on November 28, 2022, plaintiff alleges that the actions of WPD and JIAC officers led to Lofton's death. (ECF 1, 58.) Highly summarized,[2] plaintiff states that 17-year-old Lofton returned to his foster home in the early morning hours of September 24, 2001, exhibiting behavior that made his foster father concerned about his mental health. The foster father called the police to obtain a mental-health evaluation and treatment for Lofton. When WPD officers arrived, Lofton appeared afraid, paranoid, and delusional. Although Lofton presented no threat of harm, officers placed him in a full-body-restraint system. This exacerbated his mental trauma. Then WPD officers, rather than taking Lofton to a hospital for a mental-health evaluation, instead took him to JIAC, a detention center.

Once at JIAC, a WPD officer completed an intake form in which he falsely reported that Lofton was not in need of medical treatment, so as to avoid having to transport Lofton to a hospital.

---

[1] These background facts are taken from plaintiff's amended complaint (ECF 58) and are construed in the light most favorable to plaintiff for the purpose of this motion.

[2] The court set out a more complete summary of plaintiff's factual allegations in its Memorandum and Order granting partial dismissal on December 2, 2022. (ECF 63, at 2-5.) Only allegations germane to resolving the present motion are repeated here.

Plaintiff alleges that JIAC officers knew the WPD officer knew this was false.  After a period, officers removed Lofton from the restraint system and placed him in a holding cell.  When Lofton attempted to approach the intake booth, a JIAC officer instructed him not to do so, Lofton disregarded those instructions, and the officer pushed Lofton.  A skirmish ensued in which two JIAC officers grabbed Lofton and tried to tackle him to the ground.  Within a minute or two, the officers pinned Lofton to the ground in a prone position, shackled his feet, and placed him in handcuffs.  A number of JIAC officers then took turns pinning Lofton on the ground in the prone position for 39 minutes, until he died.

Plaintiff asserted claims of excessive force and deliberate indifference to a serious medical need against WPD officers; excessive force, failure to intervene, and deliberate indifference to a serious medical need against JIAC officers; *Monell*[3] claims of excessive force and deliberate indifference in failure to train against the County; a *Monell* claim of deliberate indifference in failure to train against the City; and negligence claims against all defendants.  (ECF 1, 58.)  The City and County filed separate motions to dismiss the *Monell* claims against them.  (ECF 20, 29.)  On December 2, 2022, the court granted the motions and dismissed the *Monell* claims.  (ECF 63.)

On February 3, 2023, the WPD officers filed a motion to dismiss based on plaintiff's failure to plead facts against them individually, rather than collectively.  (ECF 112.)  The parties agree that at the time plaintiff filed the amended complaint, he did not have "allegations specific to any individual officer because . . . the City of Wichita refused to disclose the identity of officers or any details regarding them in response to Plaintiff's pre-suit open records requests or in Defendant's initial Rule 26 disclosures."  (ECF 116, at 6-7.)  Plaintiff states that he has now learned additional

---

[3] "Under *Monell*, a plaintiff may sue local governing bodies directly for constitutional violations pursuant to the body's policies."  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)).

information through discovery, and that the current Motion for Leave to File Second Amended Complaint is based on that new information.  (*Id.* at 7; ECF 120, at 1.)  Plaintiff indicates that he seeks to address the concerns raised in the WPD officers' motion to dismiss, as well as "raise additional claims based on testimony obtained in deposition."  (ECF 116, at 7.)

On February 24, the City and the County (but not the law-enforcement officer defendants) each filed a partial opposition to plaintiff's request to file a second amended complaint.  The City opposes the request to assert an ADA claim and *Monell* claims against the City, arguing only that adding the proposed new claims would be futile.  (ECF 125.)  The County opposes the request to assert an ADA claim and *Monell* claims against the County, arguing plaintiff has failed to demonstrate good cause for an untimely amendment and that the proposed new claims are prejudicial, untimely, futile, and made in bad faith.  (ECF 124.)

## II.    LEGAL STANDARDS

Once a responsive pleading has been filed and twenty-one days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 dictates the court "should freely give leave when justice so requires."  When a party moves to amend after the scheduling-order deadline, however, Fed. R. Civ. P. 16(b)(4) also is implicated. *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).  Rule 16(b)(4) provides that a scheduling order may be modified "only for good cause."  The Tenth Circuit has directed courts to use "Rule 16's good cause requirement as the threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed."  *Id.* at 1241.  Only if the court finds the moving party has established good cause under Rule 16 should the court go on to determine whether leave to amend should be granted under Rule 15(a)(2).  *Id.* at 1242; *Schneider v. Citimortgage, Inc.,* No. 13-4094-SAC, 2016 WL

344725, at *2 (D. Kan. Jan. 28, 2016).  Ultimately, whether to grant a motion to amend is within the court's sound discretion.  *Gorsuch*, 771 F.3d at 1240.

The Scheduling Order in this case set a deadline of December 9, 2022, for amending the pleadings.  (ECF 42.)  Because plaintiff did not file the current motion until February 24, 2023, the court will begin its analysis by applying Rule 16's good-cause standard.

## III.    ANALYSIS

### A.    Good Cause for Amendment under Rule 16(b)(4)

Rule 16(b)(4) directs that a scheduling order "may be modified only for good cause and with the judge's consent."  The good-cause standard requires the movant to show that "existing scheduling order deadlines cannot be met despite the movant's diligent efforts."  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988–89 (10th Cir. 2019).  Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."  *Gorsuch*, 771 F.3d at 1240.  On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed."  *Id*.  The good-cause standard generally requires the moving party to provide an adequate explanation for the delay.  *Tesone*, 942 F.3d at 988.

The question presented here is whether plaintiff had enough information to plead his proposed new claims and allegations by the December 9 scheduling-order deadline.

Asserting Claims Against Officers Individually and Dismissing Two Officers

No party opposes plaintiff's motion to the extent that it seeks leave to dismiss two WPD officers and to assert claims against the other WPD officers on an individual basis, rather than as a collective group.  In the parties' recent joint motions to amend the scheduling order, they appear to agree that defendants' initial discovery disclosures did not provide any detail about the role each

officer played in Lofton's restraint and transport on the day of his death, and plaintiff did not learn such details until the parties began taking depositions in January.  (ECF 116, at 7; ECF 139, at 3-4.)  So all parties seem to recognize plaintiff had adequate reason to delay these proposed amendments, and the court has no reason to disagree.

<u>*Monell* Claims Against the City and County</u>

The court reaches the same conclusion with respect to plaintiff's proposed new *Monell* claims.  Although plaintiff's original complaint asserted *Monell* claims, his proposed new claims are premised on information he learned in discovery after the December 9 deadline—discovery that defendants agree plaintiff was diligent in pursuing.[4]

Plaintiff's first new proposed claim asserts that the City has an official, unconstitutional policy of deliberate indifference to the serious medical needs of juveniles in mental-health crises. (ECF 121, at 54 (Proposed Count 22).)  Specifically, plaintiff alleges that the City policy requires officers "to arrest and jail juveniles in mental health crisis if the juveniles resist arrest," that WPD officers followed that policy in deliberate indifference to Lofton's health and safety, and that following the policy resulted in Lofton's injuries.  (*Id.*)  Plaintiff states that he "did not have the requisite documents from the WPD and had not deposed the relevant officers" necessary to gather information in support of this claim before the December 9 deadline because the City did not produce documents pursuant to its Rule 26(a)(1) disclosures until December 16.  (ECF 120, at 7 (citing ECF 73).)  Plaintiff explains that he was diligent in attempting to obtain the discovery

---

[4] Both the County and the City challenge plaintiff's right to re-assert *Monell* claims that the court dismissed, even when the proposed new claims are based on newly learned information. That argument is properly addressed under the Rule 15 (futility) analysis below and not considered here.  In evaluating whether plaintiff has satisfied Rule 16's good-cause requirement, the court limits its analysis to the timing of when plaintiff learned information that supports his proposed amendments.

earlier—even filing a motion to compel the City's Rule 26 disclosures on November 28—but the City did not produce the documents until after the deadline to amend. (*Id.* at 8 (citing ECF 57).) The City's late production included documents, as well as video and audio recordings, necessary for plaintiff "to prosecute his case." (*Id.* at 9.) The parties agree that depositions began in the case as soon as possible under an "aggressive schedule," and that the parties have been "diligent" in pursuing discovery. (ECF 139, at 3, 8.) Plaintiff deposed eight WPD police officers in January and February, then filed his motion for leave to amend on February 25. (*Id.* at 4.) Given these considerations, the court finds that plaintiff has demonstrated good cause for not moving to amend his complaint to assert this claim before the deadline.

Plaintiff's second proposed *Monell* claim against the City is a deliberate-indifference-in-failing-to-train claim. It alleges the City has a policy, pattern, and practice of failing to train WPD officers "on dealing with juveniles and those in the throes of a mental health crisis." (ECF 121, at 53 (Proposed Count 21).) The language of the proposed claim itself is virtually unchanged from the claim the court dismissed on December 2 (Count 14), but plaintiff seeks to add new and different factual allegations to his complaint in order to support the underlying basis for the claim. Plaintiff seeks to allege that the City did not properly train WPD officers on how to handle persons experiencing a mental-health crisis who resist arrest, and trained WPD officers that such person's resistance to officers "warrants detention at a facility rather than a mental health evaluation." (ECF 121, at 7.) Plaintiff states that he did not learn that WPD officers were trained to transport such persons to a detention facility until he deposed individual WPD officers in January and February. For the reasons stated in the preceding paragraph, the court finds that plaintiff was diligent in pursuing the individual officers' depositions that led to the discovery of these new alleged facts,

and that plaintiff has demonstrated good cause for not moving to plead this claim before the amendment deadline.

Plaintiff's next proposed *Monell* claim is a deliberate-indifference-in-failing-to-train claim against the County. It alleges the County has a policy, pattern, or practice of failing to train correctional personnel about the dangers of restraining persons in the prone position and instead training them that they could hold a child in a prone position "for as long as deemed necessary for the child to remain calm." (ECF 121, at 42-44 (Proposed Count 12).) In the opening sections of the complaint, plaintiff proposes to add factual allegations supporting this claim, such as that (1) County officers "testified in deposition that they were unaware of any concern regarding prone restraint positioning" despite being trained on the use of prone restraints, and (2) that one officer testified "that the County trained him that he could force a child into the prone position and restrain him there until the child calmed down." (*Id.* at 6, 27.) Similar to plaintiff's proposed new claims against the City, he explains that these proposed amendments are "based on information recently gleaned from the depositions of four of the individual Sedgwick County defendants." (ECF 120, at 4.) Those dispositions occurred in January and February, and as mentioned above, the parties agree that the depositions proceeded as expeditiously as possible. Plaintiff acknowledges that the County produced its training records in discovery before the deadline for amendments, but asserts that the records "did not provide sufficient information or details about Sedgwick County's training program to put Plaintiff on notice of the allegations Plaintiff now seeks to add." (*Id.* at 9.) Rather, details about "the lack of any training about dangers posed by prone restraint positioning" (*id.*), as well as the officers' claimed ignorance about such dangers (ECF 136, at 3), did not come to light until plaintiff began deposing County correction officers in January. The court finds plaintiff has demonstrated good cause for the late addition of this claim.

Plaintiff's final proposed *Monell* claim also is against the County.  It alleges that the County has a policy that sanctions excessive force.  (ECF 121, at 42 (Proposed Count 11).)   Like the second proposed claim against the City, plaintiff has not changed the language of the claim that the court dismissed on December 2, but instead seeks to add new factual allegations as the basis for the claim.  Specifically, plaintiff proposes to add an allegation that the County "failed to adopt any specific policies regarding [*i.e.,* limiting] the use of prone restraints" even though the dangers associated with prone restraints are widely known and the County knew that "its corrections officers routinely employed prone restraints against youth."  (*Id.* at 29.)  Plaintiff further asserts that because the County trained its officers that they could place a juvenile in the prone position until the juvenile calmed down, the City had a policy that prolonged prone restraints.  (ECF 136, at 1.)  Again, plaintiff bases this related *Monell* claim on underlying facts that he did not learn until depositions began.  He sought leave to amend shortly thereafter.  Plaintiff has established good cause to extend the scheduling-order deadline for amending the complaint to assert facts supporting this claim.

> ADA Claims Against the County and the City

Next, the court considers whether plaintiff could have asserted his proposed new ADA claims against the County and the City by the deadline.  In the two nearly identical proposed ADA claims, plaintiff asserts that (1) Lofton was a qualified person with a disability because he was suffering a mental health crisis, (2) the City and the County excluded Lofton from public benefits by failing to provide him a mental-health evaluation/treatment, (3) such exclusion was because of Lofton's disability, and (4) as a result, Lofton suffered damages, including bodily injury, pain, suffering, and emotional distress.  (ECF 121, at 74-75 (Proposed Counts 45 & 46).)  He explains that the foundation of this claim "is the intentional and knowing denial of mental health care

services" as shown by WPD's falsification of the intake form and "the County's employee (Stepien) knowingly permit[ting] this." (ECF 136, at 9.) He further argues that he has supported his ADA claim against the City by alleging Lofton had a qualified disability because he was seeing imaginary people and saying people wanted to kill him. (*Id.* at 10.)

But the facts supporting these assertions were included in plaintiff's November 23 Amended Complaint. (ECF 58.) For example, plaintiff pleaded therein that Lofton "clearly" and "obviously" was experiencing a mental-health crisis, reported seeing people who were not there, and stated that people were "trying to kill him" (*id.* at 3, 8), that officers had an opportunity to obtain needed mental-health care for Lofton (*id.* at 12), that WPD officers intentionally falsified the intake report to avoid transporting Lofton for treatment (*id.* at 3), that a county employee "knowingly permitted" the falsification (*id.* at 4), and that Lofton suffered "severe pain and suffering and emotional distress" as the result of being brought to JIAC instead of the hospital (*id.* at 22-25). Plaintiff has not explained why, then, he could not have brought his ADA claims by the December 9 deadline. Although plaintiff states that he was not aware of the newly discovered factual allegations supporting his ADA claim "prior to receiving the City of Wichita's supplemental Rule 26 disclosures, written discovery from defendants, and deposing the individual WPD officers and Sedgwick County corrections officers," (ECF 120 at 9), the assertions in his amended complaint belie this conclusory statement. Because plaintiff has not identified any specific information necessary to plead his ADA claims that he did not obtain until after the deadline to amend the pleadings, he has not demonstrated good cause for the late addition of ADA claims. Thus, the court denies plaintiff's motion to the extent that it seeks to add ADA claims against the County and the City in proposed Counts 45 and 46.

### B.      Leave to Amend Under Rule 15(a)

Because plaintiff has satisfied Rule 16(b)(4)'s good-cause standard for some of the proposed amendments to his complaint, the court goes on to the Rule 15(a) analysis.  As mentioned above, Rule 15(a) anticipates the liberal amendment of pleadings.  Although whether to grant a motion to amend is within the court's discretion, Rule 15's directive to "freely give leave" is a "mandate . . . to be headed." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  Nonetheless, a court may deny leave to amend upon "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)).  Practically speaking, the party opposing a motion to amend bears the burden to demonstrate why the amendment should not be permitted.  *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (holding that, in the absence of such a showing, amendment should be allowed).

### 1.      The County's Opposition to Amendment

The County argues that leave to amend the complaint to assert the two *Monell* claims against it should be denied because the amendments would unduly prejudice the County, plaintiff unduly delayed in seeking the amendments and now is seeking them in bad faith, and the amendments would be futile.  The County raises the same arguments with respect to plaintiff's proposed new ADA claims, but the court already denied plaintiff leave to assert those claims as

set forth above.  So the court will proceed to consider whether to grant leave to assert only the amended *Monell* claims under Rule 15(a).

Prejudice

The County first argues the court should deny leave to amend because the proposed amendments would prejudice the County.  (ECF 124, at 6.)  Undue prejudice is the most important factor in determining whether to allow amendment to the pleadings.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'"  *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).  This occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.*  "While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants."  *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018); *see also* 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (recognizing a plaintiff typically will not be precluded from amending "simply because that amendment may increase defendant's potential liability").  The County, as the party opposing the amendments, has the burden of showing prejudice.  *See Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011).

The County asserts that allowing plaintiff to assert his new proposed claims "would be prejudicial to the County because it would significantly expand the scope of this litigation and require the County to investigate and conduct discovery on new defenses in an insufficient amount of time."  (ECF 124, at 6.)  The County discusses some hurdles that would accompany a new ADA claim, but the County does not identify any specific additional discovery that it would seek to

12

conduct based on the proposed *Monell* failure-to-train and excessive-force claims arising from the County officers' use of prone restraints.

Given that the court has denied plaintiff leave to assert new ADA claims, the court only considers whether the amended *Monell* claims would unduly prejudice the County. The County has not demonstrated that they would. The claims arise out of the same subject matter as the negligent-failure-to-train claim pending against the County, as well as the excessive-force claims pending against individual County officers. These claims all arise from the County officers' actions towards Lofton when he was brought to JIAC on September 24, 2021. These actions have already been the subject of much discovery. The court recognizes the possibility that the amendment could theoretically trigger the need to conduct limited new discovery related to the County's training about prone restraints, but the County has not identified any specific information it would seek to obtain. It would seem that much of the information about the County's training is in the County's possession. In any event, the Court recently extended the deadlines for discovery and expert disclosures (ECF 141), so the County will have adequate time to prepare its defenses to the new claims. For these reasons, the court finds the County has not shown that the proposed amendments would result in undue prejudice.

### Undue Delay and Bad Faith

The County next asserts that the court should deny the motion for leave to amend because the proposed amendments are untimely. (ECF 124, at 7.) Delay alone is not enough to deny a motion to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). Rather, when determining whether a party has "unduly delayed" in seeking amendment, the "[e]mphasis is on the adjective." *Id.* In evaluating what constitutes undue delay sufficient to deny a motion to amend, the court must focus "primarily on the reasons for the delay." *Id.* at 1206. Denial is

appropriate where the party seeking amendment "has no adequate explanation for the delay." *Id.*

(quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)); *see also Fed. Ins. Co. v.*

*Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that courts have "denied leave to

amend in situations where the moving party cannot demonstrate excusable neglect," including

"where the moving party was aware of the facts on which the amendment was based for some time

prior to the filing of the motion to amend").

Plaintiff has adequately explained the timing of the filing of his motion for leave to amend

to add *Monell* claims arising from County officers' use of prone restraints.  Plaintiff states that he

"only became aware of Sedgwick County's failure to properly train its corrections officers on the

dangers associated with the use of prolonged prone restraints" when specified deponents testified

in late January through mid-February "that they were neither trained on nor were made aware of

the potentially lethal consequences and other significant dangers associated with the use of prone

restraints."  (ECF 120, at 12-13.)  As discussed above, the parties agree that discovery has

proceeded expeditiously—there is no suggestion that plaintiff delayed in deposing the County

officers or in conducting a reasonable investigation of the circumstances that led to Lofton's death.

And plaintiff filed his motion for leave to amend shortly after those depositions, on February 24.

This case is not in its late stages, discovery is ongoing, and trial has not yet been set.  The court

finds no undue delay on this record.[5]

For these same reasons, the court finds no bad faith on plaintiff's part in seeking leave to

amend.  Although the County asserts that plaintiff is attempting to "try his theories and claims in

---

[5] To the extent plaintiff seeks to add background facts regarding the alleged view by the national "corrections community" about the dangers of prone restraints (*see* ECF 121 at ¶¶ 13-17, 111-15), such background facts are not "new" but they only became relevant to plead once plaintiff asserted *Monell* claims based on the County's alleged trainings in this area.  Thus, they too are timely pleaded.

a piecemeal fashion in order to extend this litigation indefinitely," the record does not bear this out.

Futility

Finally, the County argues the court should deny leave to amend as futile because the *Monell* claims would be barred by *res judicata* and because plaintiff "has asserted no new facts that would allow the claims to survive a Rule 12(b)(6) motion." (ECF 124, at 8.) "A proposed amendment is futile if the amended complaint would be subject to dismissal." *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013) (citing *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc*., 175 F.3d 848, 859 (10th Cir. 1999)). In considering whether a proposed amendment is futile, the court uses the same analysis that governs a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000). Therefore, the court will only deny an amendment on the basis of futility when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines that plaintiff has not presented a plausible claim. *Little*, 2013 WL 6153579, at *1 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need only "nudge[ ]" his claim "across the line from conceivable to plausible." *Chilcoat v. San Juan Cnty*., 41 F.4th 1196, 1218 (10th Cir. 2022) (quoting *Twombly*, 550 U.S. at 570) (holding district court erred in denying plaintiff leave to amend complaint to add a different municipal-liability claim because the claim was plausible and therefore not futile). "The party opposing the amendment has the burden of showing the proposed amendment is futile." *Toney v. Harrod*, No. 15-CV-3209-EFM-TJJ, 2018 WL 2020743, at *2 (D. Kan. May 1, 2018); *see also U.S. Bank Nat'l Ass'n v. Multi Serv. Corp.,* No.

15-CV-7502-EFM, 2015 WL 9272846, at *2 (D. Kan. Dec. 1, 2015) ("The party opposing the amendment has the burden to show the basis for denial.").

The County first opposes these claims on the ground that the court dismissed *Monell* claims against the County on December 2 (ECF 63, at 7-14), such that any reasserted *Monell* claims would be dismissed as barred under *res judicata* principles.  (ECF 124, at 2, 9.)  In support of this argument, the County relies on the directive in Federal Rule of Civil Procedure 41(b) that a dismissal operates as an adjudication on the merits unless the dismissal order states otherwise.  Without determining whether the court's dismissal of plaintiff's previous *Monell* claims was with or without prejudice,[6] the court finds this standard does not apply regardless.  Plaintiff's proposed new *Monell* claims arguably are based on a County policy or practice different from the one underlying the dismissed claims.  Multiple *Monell* claims may be brought in the same suit based on a vast number of municipal customs or policies, and the dismissal of one does not foreclose assertion of another.  *See Chilcoat*, 41 F.4th at 1216 (affirming district court's dismissal of one *Monell* claim against county but reversing district court's denial of leave to amend complaint to assert different *Monell* claim against county).

A comparison of the proposed and dismissed claims is useful in evaluating the County's position.  As discussed above, plaintiff's proposed amended complaint seeks to assert two *Monell* claims against the County, both of which are based on facts gleaned from the testimony of County correctional officers that the County did not train them about the dangers of prone restraints and did train them that prone restraints could be used on juveniles for as long as necessary to make the

---

[6] Language in the court's dismissal order suggests that the dismissal was without prejudice. (ECF 63, at 9 ("To make a claim based on an alleged unwritten custom, Plaintiff must amend his Complaint to state such claim, either with Defendants' consent or with leave of the Court, as required by Fed. R. Civ. P. 15(a)(2).").)

16

juvenile become calm.  *See discussion supra* pp. 7-9.  The first proposed claim (Proposed Count 11) asserts the County has an unconstitutional use-of-force policy dictating prolonged prone restraints and training officers on the same.  (ECF 121, at 42; ECF 136, at 3, 8.)  It seems to differ from the dismissed use-of-force claim that asserted the County ratified its officers' use of force after Lofton's death by defending the officers and casting Lofton in a negative light.  (*See* ECF 63, at 7-8.)  Plaintiff's second proposed claim (Proposed Count 12) asserts the County has a policy or practice of failing to train its correctional officers about the dangers of prone restraints.  (ECF 121, at 42-44.)  Although a close call, it could be read to differ from the dismissed failure-to-train claim that asserted the County failed to train its officers in caring for juveniles with mental health issues and de-escalation.  (*Id.* at 9-14.)  While the court does not presume to know how the presiding U.S. District Judge would decide the *res judicata* issue if it were presented in a dispositive motion, the undersigned judge cannot say that the County clearly has demonstrated that assertion of the proposed amended claims would be futile in this regard.

Next, the County asserts the court should deny leave to amend as futile because plaintiff has asserted no facts that would allow the claims to survive a Rule 12(b)(6) motion.  As to plaintiff's proposed new excessive-force claim (Proposed Count 11), the County argues plaintiff has failed to plausibly allege a ratification claim, just as he did in bringing his original excessive-force claim that the court dismissed.  (ECF 124, at 9-10.)  Likewise, the County argues plaintiff has failed to allege prior mistreatment of detainees at JIAC.  (*Id*. at 10.)  The County's arguments, however, do not recognize that plaintiff's newly proposed claim is *not* a ratification claim.  Rather, plaintiff asserts that the County had an express policy that sanctioned excessive force by dictating that officers could use prone restraints for as long as the officers deemed necessary.  (ECF 136, at 1, 8.)  Plaintiff asserts this policy directly caused Lofton's death, such that he need not plead a

history of similar mistreatment of detainees.  (*Id.* at 8.)  Considering these factual allegations in the light most favorable to plaintiff, the court cannot say that the County clearly demonstrated that plaintiff's proposed excessive-force claim is not plausible and, thus, would be futile.

Similarly, as to plaintiff's proposed new failure-to-train claim (Proposed Count 12), the County argues the claim "should be dismissed for the same reasons it was dismissed before—it does not establish a pattern of constitutional violations, nor does it establish Lofton's injuries were an obvious result of the training the County's employees received." (ECF 124, at 10.)  But, again, the County's argument does not account for the changed basis of liability for plaintiff's failure-to-train claim.  Under the new theory, plaintiff alleges the County was deliberately indifferent in training because the County officers "who restrained Cedric Lofton in the prone position for 39 minutes and caused his death were untrained on and completely unaware of any dangers associated with prone restraints." (ECF 136, at 6.)  Because plaintiff contends the County's prone-restraint training was so obviously deficient that the inadequacy made it likely that the officers would violate Lofton's constitutional rights, plaintiff was not required to plead a pattern of similar, pre-existing violations to demonstrate deliberate indifference.  *See* ECF 63, at 12-13; *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 773 (10th Cir. 2013) ("A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" (quoting *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 388 (1989))).  The County has not demonstrated that this claim, as revised, could not survive a motion to dismiss under the plausibility standard.

"In order to deny a motion to amend based on futility, the court must have a high degree of certainty that [the] proposed claim would be subject to dismissal, which is lacking here." *Bertels*

18

*v. Farm Bureau Prop. & Cas. Ins. Co.,* No. 20-2298-JWB-ADM, 2021 WL 533827, at *5 (D. Kan. Feb. 12, 2021) (citing *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (amendment should typically be allowed unless it is "patently obvious" that the plaintiff could not prevail), and *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 1957782, at *3 (D. Kan. Apr. 29, 2015) ("A party opposing amendment on the ground of futility must show more than a possibility that a claim would not withstand a motion to dismiss; it must be established that the claim would be dismissed.")).  Because the County has not demonstrated plaintiff's proposed amended *Monell* claims are clearly futile, the court exercises its discretion and grants plaintiff leave to file them against the County.  The County is not precluded, however, from reasserting its arguments in a motion under Rule 12(b)(6) or Rule 56.

**2.**       <u>**The City's Opposition to Amendment**</u>

The City's only argument against granting plaintiff leave to amend the complaint is that the proposed amendment would be futile.  (ECF 125, at 1.)  Again, because the court has denied plaintiff leave to assert new ADA claims based on Rule 16's good-cause standard, the court only considers whether Rule 15(a) favors granting plaintiff leave to assert the two proposed *Monell* claims against the City.

<u>Futility</u>

Like the County, the City first opposes the *Monell* claims on the basis that the court dismissed the original failure-to-train *Monell* claim asserted against it (ECF 63, at 14-20), such that any reasserted *Monell* claims would be dismissed as barred under Rule 41(b) and *res judicata* principles.  (ECF 125, at 3.)  Again, however, plaintiff's proposed new *Monell* claims arguably are based on a County policy or practice different than the one underlying the dismissed claim.

As discussed above, plaintiff's proposed amended complaint seeks to assert two *Monell* claims against the City (a failure-to-train claim and a deliberate-indifference-to-medical-needs claim) based on the deposition testimony of WPD officers and documents produced by the City allegedly indicating that the City has a *policy* requiring officers "to arrest and jail juveniles in mental health crisis if the juveniles resist arrest." *See discussion supra* pp. 6-7.  The *Monell* claim the court dismissed in December was a failure-to-train claim premised on WPD officers' "allegedly falsifying intake responses to ensure that Lofton was admitted to JIAC rather than taken to a medical facility for mental health treatment."  (ECF 63, at 19.)  The court ruled that plaintiff did not support the claim because he did not allege a past pattern of "falsifying intake answers" so as to put the City on "notice of this kind of misconduct" by WPD officers.  (*Id.* at 20.)  Because plaintiff's proposed new claims are not premised on the falsification of intake answers, but instead are premised on (1) a policy of (2) requiring punitive detention of juveniles in mental-health crisis who resist arrest, they appear to be *Monell* claims of a different ilk than the one dismissed.  Thus, they would not be barred by Rule 41(b).

Next, the City argues the court should deny leave to amend as futile because plaintiff has asserted no facts that would allow the proposed claims to survive a Rule 12(b)(6) motion.  As to both the proposed failure-to-train claim (Proposed Count 21) and the proposed deliberate-indifference claim (Proposed Count 22), the City "incorporates, by reference, the arguments and authorities set forth [in] its Motion to Dismiss." (ECF 125, at 3.)  Specifically, the City argues that plaintiff's proposed second amended complaint fails to identify a City policy that is deliberately indifferent to the rights of persons with whom WPD officers interact and fails to allege that Lofton's death was causally connected to such a policy or practice.  (*Id.*)  In support, the City

quotes the order dismissing plaintiff's earlier *Monell* claim for failing to allege "a pre-existing pattern of similar violations by WPD officers."  (*Id.* (quoting ECF 63, at 20).)

The City's arguments fail to account for the changed basis of liability that underlies plaintiff's proposed new *Monell* claims.  Directly contrary to the City's recycled argument, plaintiff's proposed second amended complaint *does* allege that the City has an unconstitutional policy that requires "officers to arrest and jail juveniles in mental health crisis if the juveniles resist arrest," that WPD officers were trained on that policy, that WPD officers followed that policy in deliberate indifference to Lofton's health and safety, and that following the policy led to Lofton's injuries.  (ECF 121, at 54; *see also, id.* at 7 ("Officers here, particularly Sergeant Supanic, have been trained that simple resistance to police officers, resulting in no injury to police officers, warrants detention at a facility rather than a mental health evaluation."); *id.* at 3 ("Defendant Sergeant Tony Supanic ordered that Cedric be taken to juvenile detention . . . .").)  Plaintiff asserts that an "unconstitutional policy, such as this one, which is the moving force behind a constitutional violation may serve the basis for a *Monell* claim against a municipality, even without a history of similar causative injuries."  (ECF 136, at 9 (citing *Monell,* 436 U.S. at 694-95).)  Because the City has not addressed the plausibility of the new claims as pleaded in the proposed second amended complaint, it has not met its burden to demonstrate the claims should be disallowed as futile.  *See Bertels,* 2021 WL 533827, at *5 ("In order to deny a motion to amend based on futility, the court must have a high degree of certainty that [the] proposed claim would be subject to dismissal . . . .").  The City is not precluded, however, from seeking dismissal of these claims under Rule 12(b)(6) or Rule 56.

Given "the absence of any apparent or declared reason" to disregard Rule 15(a)'s mandate "that leave to amend 'shall be freely given,'" *Foman*, 371 U.S. at 182, the court grants plaintiff's

request to file a second amended complaint incorporating amendments that met Rule 16's threshold good-cause requirement (*i.e.,* all amendments other than the addition of ADA claims).

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Leave to File Second Amended Complaint (ECF 119) is granted in part and denied in part, as set forth above.  The court directs plaintiff to file his second amended complaint—without the addition of proposed Counts 45 and 46—as a separate docket entry within five days of the date of this Memorandum and Order.

**IT IS SO ORDERED.**

Dated April 21, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge