IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARQUAN TEETZ, as Next Friend and
Personal Representative of the ESTATE OF
CEDRIC LOFTON, deceased,

    *Plaintiff*,

v.

JASON STEPIEN, et al.,

    *Defendants*.

Case No. 22-CV-1134-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendants Ryan O'Hare's, John Esau's, Jordan Clayton's, Cory Bennett's, Tony Supancic's, Amanda Darrow's, and John Knolla's (collectively, the "WPD Officers") Motion for Summary Judgment (Doc. 198). The WPD Officers argue that Plaintiff's federal deliberate indifference and supervisory liability claims are barred by qualified immunity, and the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Because Plaintiff fails to demonstrate that the WPD Officers violated clearly established law, the Court determines that the WPD Officers are entitled to qualified immunity. Accordingly, the Court grants the WPD Officers' motion as to their federal claims and dismisses Plaintiff's remaining state law claims without prejudice.

## I. Factual and Procedural Background[1]

Cedric Lofton was a 17-year-old foster child. On September 23, 2021, Lofton's foster father, Tanea Randolph, drove him to Comcare—a certified behavioral health clinic—in Wichita, Kansas for a mental health evaluation. After Randolph and Lofton arrived at Comcare, but before they entered the facility, Lofton told Randolph that he thought people were trying to kill him and ran away from Randolph. Randolph called the Wichita Police Department ("WPD") to report Lofton as a runaway.

In the early morning hours on September 24, Lofton returned to Randolph's home. Randolph called the foster care agency, the Kansas Department of Children and Families, who told him to call WPD and to not let Lofton back into the home. Randolph followed these instructions.

After receiving Randolph's call, WPD Officers Cory Bennett and Ryan O'Hare arrived at Randolph's home. WPD Officer Jordan Clayton arrived shortly thereafter. When they arrived, the officers found Lofton on the porch of the residence. Officer O'Hare spoke with Randolph, who mentioned that Lofton might be showing symptoms of schizophrenia and wanted him to go to St. Joseph's Hospital for a mental health evaluation.

The officers observed Lofton hallucinating and acting out of touch with reality. He often made comments about people trying to kill him. Police told Lofton that they were there to help him and that his foster father wanted him to be evaluated before he was allowed back into the residence. But Lofton said that he did not want to go with the officers and that he would stay outside on the porch until the morning. Multiple times the officers requested that Lofton go with them to St. Joseph's Hospital to get a mental health evaluation and medical treatment. Each time Lofton refused.

---

[1] The facts are those uncontroverted by the parties unless otherwise indicated.

After 40 minutes of Lofton refusing to accompany the officers to the hospital, Officer O'Hare called Sergeant Supancic and informed him of the situation. Officer O'Hare requested Sergeant Supancic's presence at the scene, and he arrived soon after. Once at the house, Sergeant Supancic spoke with Randolph to assess the situation. Then, Sergeant Supancic spoke to Lofton and encouraged him to go with the police to get evaluated at the hospital. He explained to Lofton that Randolph would come with them, the evaluation was necessary to reenter Randolph's house, and Lofton's health and safety was WPD's top priority. Once again, Lofton refused to voluntarily go with the officers.

At Lofton's refusal, Sergeant Supancic directed the officers to take Lofton and transport him to St. Joseph's Hospital. Lofton immediately resisted the officers' attempt to transport him, kicking Officer O'Hare multiple times. During the scuffle, Lofton kicked Sergeant Supancic in the chest; struck Officers O'Hare, Bennett, and Clayton; lifted some officers up off the ground; and attempted to bite the officers.

Sergeant Supancic radioed for a WRAP restraint device to be brought to the scene. The officers eventually restrained Lofton, placing him in handcuffs and leg cuffs. Soon after, Officers John Esau, Amanda Darrow, and John Knolla arrived and assisted the other officers with placing Lofton in the WRAP restraint device. Once secured in the WRAP, Lofton started to calm down.

WPD has various policies instructing officers on how to handle mentally ill persons they encounter. Specifically, WPD Policy 519 states in relevant part:

> (II)(J)(1) Individuals in mental crisis who require medical attention, physical restraint due to aggressive behavior, and/or who are unable to converse in a coherent manner due to alcohol or drug impairment . . . will be taken to Via Christi St. Joseph ER at 3600 E. Harry.
>
> (II)(J)(2) When an officer delivers a mentally ill person to the emergency room [ER] at Via Christi St. Joseph, the officer shall remain with the individual while the ER staff checks in the individual. The officer will then accompany the mentally ill

person into the triage nurse's station. The officer will give the triage nurse the details surrounding the transport.

(II)(J)(3)(b) If the mentally ill person is combative or poses a significant safety concern for the ER staff the officer will wait with the subject until Via Christi Security can respond. The officer shall remain with the mentally ill person while the ER staff work to safely secure the subject. The officer shall remain for a reasonable amount of time.

Despite this policy, however, Sergeant Supancic determined that Lofton had committed several counts of battery on law enforcement officers during the struggle. He claimed that he did not want to risk Lofton battering someone else at the hospital. As such, he directed Lofton to be transported to the Sedgwick County Juvenile Intake and Assessment Center ("JIAC").

At 2:43 a.m., the WPD Officers carried Lofton into the JIAC facility still in the WRAP restraint. Jason Stepien was working as a Juvenile Intake Specialist at JIAC. At 3:37 a.m., the WPD Officers entered a holding room at JIAC and removed the WRAP restraint, leaving Lofton alone in the holding room.

Between 4:07 and 4:17 a.m, Officer O'Hare gave Stepien his completed arrest report, filled out the JIAC Intake Questionnaire, and signed the electronic form for the Intake Questionnaire. The Intake Questionnaire asked the following 6 questions:

Upon entry to the JIAC Facility, does the juvenile have any of the following:
(1) Physical injury that appears to need immediate medical care?
(2) Signs of acute illness that appear to need immediate medical care?
(3) Signs of intoxication with *significant* impairment in functioning?[2]
(4) Has taken medications, illicit drugs, and/or substances that pose a significant and immediate health risk?
(5) Warning signs and symptoms for suicide that appear to need immediate medical care?
(6) Has been tased during or subsequent to arrest?

Officer O'Hare's submitted Intake Questionnaire answered "no" to all 6 questions.

---

[2] Emphasis in original.

At 4:17 a.m., the WPD Officers left JIAC. At the time they left, Lofton was still in the holding room. Lofton was calm, standing upright, and walking around in the holding room for 40 minutes prior to the WPD Officers departing JIAC. It was not until 5:13 a.m. that JIAC workers began performing chest compression on Lofton after he had stopped breathing. EMS transported Lofton to the hospital around 5:46 a.m., where he was pronounced dead two days later.

On June 13, 2022, Plaintiff filed suit against several John Doe officers. On November 28, 2022, Plaintiff amended his complaint and substituted the WPD Officers for the John Doe officers. Specifically, Plaintiff alleges in Counts 13 and 15–20 that the WPD Officers were deliberately indifferent to Lofton's obvious serious mental health crisis in violation of his constitutional rights. Plaintiff alleges in Counts 25–27 that supervising WPD Officers Supancic, Darrow, and Esau directly participated in the violation of Lofton's constitutional rights, were aware of it, and failed to stop it. Lastly, Plaintiff alleges in Counts 37, 41, and 43 that the WPD Officers were negligent, intentionally inflicted emotional distress, and negligently inflicted emotional distress.

On May 5, 2023, the WPD Officers answered Plaintiff's Complaint. On February 2, 2022, the WPD Officers filed a motion for summary judgment. On March 22, 2024, Plaintiff responded, and the WPD Officers replied on April 15, 2024.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4] The movant bears

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

the initial burden of proof and must show the lack of evidence on an essential element of the claim.[5] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[8]

### III. Analysis

**A.  Deliberate Indifference to Medical Needs**

The WPD Officers move for summary judgment, arguing that qualified immunity shields them from Plaintiff's claims. However, Plaintiff contends that the WPD Officers' deliberate indifference to Lofton's obvious mental health crisis is a violation of his clearly established constitutional rights, and thus, they are not entitled to qualified immunity.

"Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity."[9] "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights."[10] When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to show that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."[11]

---

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[9] *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021).

[10] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).

[11] *Duda*, 7 F.4th at 909 (further citations omitted).

Only if the "plaintiff meets this heavy burden" must "the defendant . . . prove that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law."[12] A court has discretion to address these prongs in either order, but a plaintiff must satisfy both to avoid qualified immunity.[13] Here, the Court begins and ends its analysis with the clearly established prong.

### 1.    *Clearly Established*

Plaintiff claims that the WPD Officers violated Lofton's clearly established constitutional right to receive immediate treatment for his serious medical needs, i.e., his mental health crisis. However, the WPD Officers contend that Plaintiff's proposed cases are too dissimilar to provide them adequate notice that their specific conduct—namely, taking Lofton to JIAC instead of a hospital—violated clearly established law.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[14] "The salient question is whether the state of the law at the time of [the] incident provided fair warning to the defendants that their alleged conduct was unconstitutional."[15]

It is the plaintiff's burden to present a Supreme Court or Tenth Circuit decision on point or to demonstrate that the overwhelming weight of authority from other courts clearly established the

---

[12] *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

[13] *Milner v. Mares*, 754 F. App'x 777, 778 (10th Cir. 2019) (citing *Pearson*, 555 U.S. at 236).

[14] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted).

[15] *Crowson v. Wash. Cnty., Utah*, 983 F.3d 1166, 1178 (10th Cir. 2020) (cleaned up) (further citations and quotations omitted).

right at the time the incident occurred.[16] "[A] case directly on point" is not necessary if "existing precedent . . . ha[s] placed the statutory or constitutional question beyond debate."[17]

"[T]he precedent must have clearly established the right in light of the specific context of the case, not as a broad general proposition."[18] Reaching the generalized conclusion that deliberate indifference to an arrestee's medical needs is a clearly established constitutional violation is overbroad and insufficient to satisfy the second prong of the qualified immunity test.[19] "If such a general statement of the constitutional violation that must be clearly established were sufficient, qualified immunity would almost never be granted."[20]

Here, the proper inquiry is whether Plaintiff has presented cases that either themselves established or reaffirmed a previously established constitutional right for an arrestee to receive immediate, involuntary hospitalization for his mental health problems. To meet this standard, the Court will evaluate whether Plaintiff's cases are directly on point or whether Plaintiff has presented robust authority placing the constitutional question beyond debate. Here, Plaintiff presents two cases as evidence that the WPD Officers violated clearly established law. The Court will address each in turn.

---

[16] *Finch v. Rapp*, 38 F.4th 1234, 1240 (10th Cir. 2022); *Galindo v. Taylor*, 2024 U.S. Dist. LEXIS 45215, *52 (D. Kan. Mar. 14, 2024).

[17] *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotations omitted).

[18] *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (further citations and quotations omitted); *see also Mullenix*, 577 U.S. at 12 (emphasizing that the Supreme Court has repeatedly told lower courts not to define clearly established law at "a high level of generality").

[19] *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015).

[20] *Id.*

i.   *Olsen*

Plaintiff cites *Olsen v. Layton Hills Mall*[21] as "fair and clear warning" that "deliberate indifference to a mental health issue" violates clearly established law. In *Olsen*, an officer arrested the plaintiff for possession of a stolen credit card and placed him in the back of the squad car.[22] The plaintiff suffered from a medically diagnosed condition of obsessive-compulsive disorder ("OCD"), which can cause panic attacks.[23] The plaintiff had a panic attack en route to the jail and informed the officer, but the officer neglected to address his two requests for assistance.[24] Once at the jail, the plaintiff told officers that he required medication to stave off his panic attacks.[25] Yet, the officers confiscated his OCD medicine, required him to remove his shoes and socks, and fingerprinted him amidst his protests, which induced another panic attack.[26] The plaintiff filed a § 1983 deliberate indifference to medical needs claim, and the officers asserted qualified immunity.

*Olsen* cannot be considered a "directly on point" case because it failed to create or reaffirm the right at issue before this Court—that is, an uncooperative mentally ill arrestee's right to hospitalization and involuntary submission to a mental health evaluation. At the district court level, the officers were granted qualified immunity because the plaintiff failed to establish a violation of his constitutional rights.[27] However, the Tenth Circuit reversed and found that genuine disputes of material fact existed regarding the seriousness of OCD as a medical condition and the officers'

---

[21] 312 F.3d 1304 (10th Cir. 2002)

[22] *Id.* at 1310.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 1316.

-9-

knowledge of and disregard to the plaintiff's health.[28] Because of these disputed material facts, the Tenth Circuit concluded that it was "wholly improper for the district court to have granted summary judgment."[29] Since the Tenth Circuit could reverse on this basis alone, it did not analyze the clearly established law question. Rather, the court only passively mentions in an introductory rule paragraph that "[t]he right to custodial medical care is clearly established."[30]

True as that may be, without further elaboration, *Olsen* cannot serve as a sufficient basis for this Court to confidently answer the question of whether an arrestee has a constitutional right to immediate, involuntary hospitalization for his mental health problems. The Court must ask and answer such a specific question per the Supreme Court's direction "not to define clearly established law at a high level of generality."[31] Thus, the Court must look beyond *Olsen*'s general finding that "the right to custodial medical care is clearly established" and instead seek to discover whether *Olsen* identifies—or itself establishes—law on a deeper level of particularity.

When performing this analysis, it becomes clear that the Tenth Circuit in *Olsen* did not reprimand the officers for taking the plaintiff to jail instead of a hospital, nor did it reprimand the officers for failing to obtain a mental health evaluation for the plaintiff. Thus, considering the specific facts and circumstances of this case compared with *Olsen*, the Court cannot conclude that *Olsen* either reaffirmed or created a precedent placing the constitutional question of immediate, involuntary hospitalization for mental health issues beyond debate. As such, Plaintiff's reliance on *Olsen* is insufficient to meet his burden of presenting caselaw which demonstrates a clearly established right.

---

[28] *Id.* at 1316–17.

[29] *Id.* at 1316.

[30] *Id.* at 1315.

[31] *Mullenix*, 577 U.S. at 12.

ii.   *Sawyers*

Next, Plaintiff claims that mental health needs can qualify as objectively serious conditions under the Eighth and Fourteenth Amendments, and deliberately ignoring those needs is unconstitutional. Plaintiff supports this generalized assertion with an "e.g." citation to *Sawyers v. Norton*,[32] but provides no analysis of *Sawyers*'s facts or legal reasoning. As previously mentioned, deliberate indifference to an arrestee's medical needs in itself is too broad to qualify as a clearly established constitutional violation because it ignores case-specific context. Rather, it is the plaintiff's burden to prove that the defendants' conduct was deliberately indifferent to the arrestee's medical needs and, at the time the incident occurred, clearly established law deemed such conduct unconstitutional.[33] The Court could find that Plaintiff fails to meet his burden on this basis alone.[34] However, despite Plaintiff's complete lack of explanation, the Court will nonetheless evaluate whether *Sawyers* is a directly on point case or places the constitutional question beyond debate.

In *Sawyers*, officers arrested the plaintiff for setting fire to an art gallery under the belief that God had told him to "cleanse the business of witches with fire."[35] He was charged with a felony and booked into the county jail.[36] There, a counselor initially assessed that his delusions and psychosis interfered with his ability to exercise good judgment, but he did not display any

---

[32] 962 F.3d 1270, 1284 (10th Cir. 2020).

[33] *Toler*, 631 F. App'x at 547.

[34] *See e.g.*, *Alexander v. Bouse*, 2018 U.S. Dist. LEXIS 32310, at *10 (D. Kan. Feb. 28, 2018) (rejecting plaintiff's proffered cases on the clearly established law issue because of "the lack of analysis supporting plaintiff's interpretation of the cited cases"); *Manning v. City of Tulsa*, 2024 U.S. Dist. LEXIS 87131, at *15–16 (N.D. Okla. Apr. 8, 2024) (rejecting plaintiff's proffered cases on the clearly established law issue because, among other things, they were "is too factually different").

[35] *Sawyers*, 962 F.3d at 1275.

[36] *Id.*

aggressive behavior toward himself or others.[37] Nonetheless, the counselor recommended that the plaintiff continue to be evaluated while in custody because his delusions and hallucinations could intensify.[38] While in custody, the plaintiff exhibited extreme behavior including peeling back his toenails, causing other self-inflicted wounds, refusing meals, and refusing medication.[39] For nearly two weeks the plaintiff was seen several times by various mental health professionals.[40] Deputies watched and logged the plaintiff's activity "*ad nauseum*—whether his doings were mundane or noteworthy."[41] One night, however, the plaintiff was left unmonitored for about three hours.[42] During that time, he had removed his right eye from its socket and was attempting to injure his left eye at the time the deputies intervened.[43] The plaintiff filed a § 1983 deliberate indifference to medical needs claim, and the deputies asserted qualified immunity.[44]

*Sawyers*—like *Olsen*—cannot be considered a "directly on point" case because it too failed to create or reaffirm the right at issue before this Court. At the district court level, the jail deputies were denied qualified immunity because too many genuine issues of fact precluded summary judgment.[45] Similar to *Olsen*, because the court could deny qualified immunity on this basis alone, it did not analyze the clearly established law question. Rather, the district court only conclusorily stated that it is "clearly established by Tenth Circuit precedent that [the plaintiff] is entitled to

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 1276.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 1277.

[43] *Id.*

[44] *Id.* at 1275.

[45] *Id.* at 1283.

protection against deliberate indifference."[46] On appeal, the jail deputies argued that the district court erred in finding that clearly established law supported their deliberate indifference violation.[47] However, the Tenth Circuit declined to adjudicate this issue, finding that the officers "waived a challenge to the district court's clearly-established-law holding" "[d]ue to their inadequate briefing."[48] Thus, the Tenth Circuit affirmed, not because the district court performed a proper clearly established law analysis, but because the jail deputies committed a procedural preservation error.

Yet, even if the Tenth Circuit had decided whether the law was clearly established, the precise question it would have answered would not aid this Court in its decision. Namely, it is of little relevance to this Court whether officers must carefully and frequently monitor a mentally ill inmate with a well-documented history of repeatedly serious self-harm to avoid violating his constitutional rights. Rather, this Court seeks to determine whether officers must immediately hospitalize an uncooperative, mentally ill arrestee and involuntarily submit him to a mental health evaluation to avoid violating his constitutional rights.

In trying to answer *this* specific question, *Sawyers* glosses over the plaintiff's initial interaction with the arresting officers, and instead focuses its constitutional analysis on an incident that occurred two weeks after the plaintiff's arrest under the supervision of completely different officers. This gives the Court little information regarding the constitutional requirements for the arresting officers, as the defendants in *Sawyers* were the jail deputies—not the arresting officers. As such, *Sawyers* hardly suffices as authority that "would have put a reasonable officer on notice

---

[46] *Sawyers v. Norton*, 2019 U.S. Dist. LEXIS 91017, at *18 (D. Colo. May 31, 2019).

[47] *Sawyers*, 962 F.3d at 1286.

[48] *Id.*

that his or her conduct"—that is, failing to hospitalize an uncooperative, mentally ill arrestee and submit him to a mental health evaluation—"was unconstitutional."[49] As such, Plaintiff's reliance on *Sawyers* is insufficient to carry his burden of presenting caselaw demonstrating a clearly established right.

In sum, neither *Olsen* nor *Sawyers* provides officers with fair warning that failing to take an arrestee who suffers from a mental health crisis to a hospital instead of a detention facility is unconstitutional. As such, Plaintiff fails to carry his burden of demonstrating that involuntary hospitalization and issuance of a mental evaluation were clearly established constitutional rights that the WPD Officers' deprived Lofton of when they took him to JIAC. Consequently, the WPD Officers are entitled to qualified immunity, and the Court grants the WPD Officers' motion for summary judgment on Counts 13 and 15–20.

**B.    Supervisory Liability**

Plaintiff's claims for supervisory liability are, likewise, barred by qualified immunity. When a supervisor seeks qualified immunity in a §1983 action, the clearly established prong is met only when the supervisor's *and* the subordinate's actions violate clearly established law.[50] As stated, Plaintiff fails to show that any of the officers' actions violated clearly established law for Lofton's Fourteenth Amendment claim. Thus, the Court concludes that Officers Supancic, Darrow, and Esau are entitled to qualified immunity on Plaintiff's supervisory liability claims. Accordingly, the Court grants the WPD Officers' motion for summary judgment on Counts 25–27.

---

[49] *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022).

[50] *Marin v. King*, 720 F. App'x 923, 942 (10th Cir. 2018) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir. 1992); *Grice v. McVeigh*, 873 F.3d 162, 169 (2d Cir. 2017); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456 (5th Cir. 1994)); *see also Lieberenz*, 2024 U.S. App. LEXIS 14238, at *23 (10th Cir. June 12, 2024) (affirming the district court's analysis of the clearly established law in the individual liability context instead of conducting a fully separate analysis of the clearly established law in the supervisory context).

### C. State Law Claims

In addition to his federal claims, Plaintiff asserts state law negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress claims. The WPD Officers ask this Court to decline to exercise supplemental jurisdiction over them or dismiss them on their merits.

"Whether to exercise supplemental jurisdiction is committed to the court's sound discretion."[51] Where a court grants summary judgment in favor of a defendant on a plaintiff's federal claims, the court may decline supplemental jurisdiction over the remaining state law claims.[52] This is because notions "of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[53] Specifically, the Tenth Circuit has expressed its preference that, "when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims."[54]

At this time, the Court has granted summary judgment to the WPD Officers on all of their federal claims. Thus, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the WPD Officers. Fairness and comity generally provide that a state court should resolve Plaintiff's state law claims, and the Court finds no compelling reasons to depart from the Tenth Circuit's general directives. Accordingly, the Court dismisses Counts 37, 41, and 43 without prejudice.

---

[51] *Satterlee v. Allen Press, Inc.*, 455 F. Supp. 2d 1236, 1257 (D. Kan. 2006).

[52] *Id.* (citing 28 U.S.C. § 1367(c)(3)).

[53] *Thayer v. Howard*, 2024 U.S. Dist. LEXIS 63786, at *30–31 (D. Kan. Apr. 8, 2024) (quoting *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[54] *Id.* at *31 (citing *Smith v. City of Enid ex rel. City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")).

**IT IS THEREFORE ORDERED** that the WPD Officers' Motion for Summary Judgment (Doc. 198) is **GRANTED** as to Counts 13, 15–20, and 25–27.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Counts 37, 41, and 43. The Court dismisses those state law claims without prejudice.

**IT IS SO ORDERED.**

Dated this 16th day of July, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE