IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARQUAN TEETZ, as Next Friend and
Personal Representative of the ESTATE
OF CEDRIC LOFTON, deceased,

*Plaintiff*,

v.

JASON STEPIEN, et al.,

*Defendants*.

Case No. 22-1134-EFM

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Strike or Exclude Certain Opinions of Jerome Davis and Michael Lyman (Doc. 222) brought by Defendants Jason Stepien, Brenton Newby, Karen Conklin, William Buckner, and Benito Mendoza (collectively, "Defendants"). Plaintiff wishes to have these experts testify about nationally recognized definitions and standards, and that based on those measures, Lofton was controlled by Defendants and Defendants continued use of force was excessive and unreasonable.

On April 18, 2024, Defendants filed this motion, and the parties timely responded and replied. Because Plaintiff seeks to controvert issues of fact using the experts' testimony, the Court determined that it should resolve Defendants' *Daubert* motion in conjunction with their summary judgment motion. On July 15, 2024, the Court held a hearing during which both parties presented their arguments. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

### I. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of opinion testimony from witnesses qualified as experts by their knowledge, skill, experience, training, or education. Under Rule 702, expert opinion testimony is admissible to assist the fact finder in matters of scientific, technical, or otherwise specialized knowledge provided that such testimony (1) is based upon sufficient facts or data, (2) is the product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case.[1] As these requirements demonstrate, the court is charged as a gatekeeper to admit only expert testimony that is relevant and reliable.[2] Consideration of proffered expert testimony is a flexible inquiry specific to the facts of the case at bar.[3] The party offering the expert testimony bears the burden of showing that the expert's testimony is admissible.[4]

### II. Analysis

**A.     Expert Jerome Davis**

Defendants' written motion asked this Court to preclude Davis from testifying because he failed to meet Rule 702's basic requirements. Specifically, Defendants criticized Davis because (1) his testimony was not based on sufficient facts or data; (2) his methodology was not based on reliable principles; and (3) even if his methodology were sound, he failed to reliably apply his methodology to the facts of the case. For these reasons, Defendants argue that Davis's opinion will not be helpful to the jury.

---

[1] Fed. R. Evid. 702.

[2] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[3] *Id.* at 593; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (rejecting formulaic application of reliability factors discussed in *Daubert* because "[t]oo much depends upon the particular circumstances of the particular case at issue").

[4] *Myrick v. Husqvarna Prof'l Prods.*, 508 F. Supp. 3d 846, 854 (D. Kan. 2020).

In contrast, Plaintiff argues that Davis's testimony will help the jury understand from a corrections perspective why it was inappropriate to continue restraining Lofton in the prone position under the circumstances, in light of generally accepted professional standards. Plaintiff does not explicitly address Davis's methodology—rather, he focuses on Davis's 30-year career as a corrections officer as the primary basis for garnering reliability for Davis's opinions.

At the hearing, both parties' arguments slightly shifted. For example, instead of attacking Davis's methodology, like Defendants had done in their briefing, they attacked the evidence upon which Davis relied. Defendants contend that Davis only relied upon the JIAC security footage in forming his opinion, and because the video lacks sound and is shot from an obstructed angle, most of Davis's opinions are based on speculation. Thus, Defendants argue that the Court should exclude Davis's testimony because speculation cannot serve as a reliable basis for expert opinion.

Plaintiff argues that Davis's testimony is necessary to refute Defendants' claim that Lofton's continued resistance justified their prone restraint. To do so, Plaintiff proffers that Davis will provide a definition of "control" which the jury can use to determine whether Defendants' actions were objectively reasonable. When pressed on what Davis's definition of control was, the ultimate consensus came from Davis's deposition. There, Davis said, "If you look at the video and you watch, while he's in that prone position on the floor, within a minute or two of that, you see no movement at all, which means, from that point on, they had complete control of Lofton." In sum, Davis's definition of "control," based on commonly recognized corrections standards, is the point at which the detainee has ceased struggling or has stopped moving.

Thus, the question before this Court is twofold: (1) whether the Court should exclude Davis's definition of control, and (2) whether the Court should exclude the parts of Davis's report

that conclude Lofton was under control based on his minute-by-minute review of the JIAC security footage. The Court will address each in turn.

### 1. Davis's Definition of Control

After reviewing the written motions and *Daubert* hearing transcript, it appears that neither party takes issue with Davis's definition of control. Specifically, when the Court asked Defendants whether it would "be appropriate for Mr. Davis to opine on his definition of control," Defendants replied, "I think that opinion would not necessarily be improper." In fact, in response to the Court's questions, Defendants stated that they "would not disagree" with "Davis's expert opinion that once a defendant has stopped struggling . . . it is not inappropriate at that point to consider that he's under control." Given that Davis's definition of control is uncontroverted, the Court will allow Davis to testify about how "control" is defined by the corrections community and what uniform national standards recognize as signs of a defendant being under officer control.

### 2. Davis's Conclusions Regarding Control

The Court will not, however, allow Davis to provide the jury with a factual summary of the case based on his observations of the video. Because the question of "control" is a factual finding, Davis will also not be permitted to testify as to his factual or legal conclusions about whether Lofton was under control. Allowing him to do so would essentially "tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."[5] The Court cannot allow an expert to "usurp[] the function of the jury in deciding the facts" or "interfere[] with the function of the judge in instructing the jury on the law."[6] The jury can watch the JIAC security

---

[5] *United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015) (further citations and quotations omitted).
[6] *Id.* at 1196.

footage for itself and form its own opinions as to whether Lofton was under the officers' control. Thus, the Court will not permit Davis to testify as to his own conclusions regarding the officers' control over Lofton.

**B.    Expert Michael Lyman**

Defendants make a similar argument regarding expert Michael Lyman's testimony. They ask the Court to prohibit Lyman from testifying about the reasonableness of Defendants' force because "objective reasonableness" is a fact issue for the jury and "excessive force" is a legal conclusion that the judge must instruct on.

Plaintiff contends that Lyman's testimony does not present a factual or legal conclusion, but rather he opines on "whether the conduct at issue fell below accepted standards in the field of law enforcement."[7] This, he argues, is permissible under Tenth Circuit precedent because it is based upon the expert's understanding of generally accepted correctional customs and practices.[8]

Following the guidance of other courts on this issue, this Court will permit Lyman to testify regarding nationally accepted corrections practices regarding use of force and the JIAC policies, but it will not allow him to testify as to any legal conclusions or other issues the jury will be asked to decide, such as whether the officers' conduct was reasonable, excessive, or unnecessary.[9]

---

[7] *Zuchel v. City and Cnty. of Denver, Colo.*, 997 F.2d 730, 742 (10th Cir. 1993).

[8] *Id.*

[9] *See Estate of Smart v. City of Wichita*, 2020 WL 3618850, at *4 (D. Kan. July 2, 2020) ("The court finds Lyman's opinions that officers' actions were 'excessive' and 'unreasonable' are legal conclusions . . . . Because these opinions do not assist the trier of fact in understanding the evidence, but rather embrace the ultimate issue, the court will not permit such testimony." (further citations and quotations omitted)); *Pacheco v. Johnson*, 2017 WL 3149580, at *2 (M.D. Tenn. July 25, 2017) ("Dr. Lyman may testify about national standards, and he may offer opinions as to how these standards should manifest in hypothetical situations . . . . He may not, however, opine . . . regarding whether the defendant acted reasonably at any point in time during his encounter with the plaintiff."); *Sanders v. Studdard*, 2014 WL 3487145, at *9–10 (W.D. Mo. Feb. 12, 2014) ("[T]he Court will not permit Dr. Lyman to testify as to any legal conclusions or other issues the jury will be asked to decide, such as whether the Officers' conduct was reasonable, excessive, or unnecessary."); *Alvarado v. Oakland Cnty.*, 809 F.Supp.2d 680, 691 (E.D. Mich. 2011) ("The Court will permit Dr. Lyman to testify on the use of excessive force but will be vigilant in precluding him for expressing opinions that embrace the actual legal conclusion that the jury is asked to decide in this case.").

Additionally, Dr. Lyman will not be permitted to testify as to the credibility of any witness, the state of mind of any witness or party, or advise the jury as to case law or constitutional standards.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike or Exclude Certain Opinions of Jerome Davis and Michael Lyman (Doc. 222) is **GRANTED in part** and **DENIED in part**. The experts may testify to nationally recognized definitions and standards, but they may not present factual or legal conclusions.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE