**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

FILED
U.S. District Court
District of Kansas

FEB 2 2026

Clerk, U.S. District Court
By Cm Deputy Clerk

MARQUAN TEETZ, as Next Friend and Personal Representative of the ESTATE OF CEDRIC LOFTON, deceased,

*Plaintiff,*

v.

JASON STEPIEN, *et al*,

*Defendants.*

Case No. 22-1134-EFM

# JURY INSTRUCTIONS

**INSTRUCTION NO. 1**

**INTRODUCTION**

The time has now come for me to explain to you the law that will govern your jury deliberations.

You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you. You as jurors are the sole judges of the facts. This means that you must take the law as I explain it to you and apply the law to the facts revealed by the evidence.

Do not single out any one instruction alone as stating the law. Rather, consider my instructions in their entirety.

Also, do not concern yourselves with the wisdom of the law. Despite any opinion you may have about what the law should be, you would violate your sworn duty if you were to base your verdict upon any view of the law other than that given to you in these instructions.

**INSTRUCTION NO. 2**

**CONTENTIONS OF THE PARTIES**

This instruction sets forth Plaintiff Marquan Teetz's claims against Defendants Jason Stepien, Brenton Newby, Karen Conklin, William Buckner, and Benito Mendoza, as well as the Defendants' denial of Plaintiff's claims.

These claims, and the denial of the claims, described below, are not evidence and you should not consider them as evidence. They simply explain the nature of the parties' dispute.

Plaintiff brings these claims as the next friend and personal representative of the estate of his brother, Cedric Lofton. Plaintiff claims that the Defendants violated Cedric Lofton's constitutional rights during an incident that occurred on September 24, 2021. Plaintiff specifically claims that Defendants used excessive force in violation of the Fourth Amendment to the United States Constitution at the Sedgwick County Juvenile Intake and Assessment Center. Plaintiff claims that as a result of Defendants' excessive use of force, Cedric Lofton experienced pain and suffering and died two days later. Plaintiff also claims that each Defendant is liable for failing to intervene to stop the other Defendants from using unreasonable force on Cedric Lofton, and that in placing him in a prolonged prone restraint.

Defendants deny Plaintiff's claims. Defendants contend that the force they used on Cedric Lofton was objectively reasonable under the totality of the circumstances.

## INSTRUCTION NO. 3

## BURDEN OF PROOF

Plaintiff has the burden of proof on his claims of Excessive Force and Failure to Intervene. "Burden of proof" means burden of persuasion.

A party who must prove something by a preponderance of the evidence must persuade you that its claims are more probably true than not true. To prove that something is more probably true than not true does not necessarily mean by the greater number of witnesses, or the length of the presentation of testimony, but rather by the greater weight of the evidence, taken together—that is, that evidence upon any question or issue which convinces you most strongly of its truthfulness. If the evidence on an issue is equally balanced, then the party having the burden to establish that issue must fail.

In determining whether a party has met his burden of proof you will consider all the evidence, regardless of which party produced the evidence.

## INSTRUCTION NO. 4

## PROXIMATE CAUSE

Proof of causation is necessary to a finding of fault. The law expresses this in terms of injuries or damages being the "proximate cause" of a defendant's actions. A defendant's actions are the proximate cause of damages when the defendant's actions causes or contributes to cause, in a natural and continuous sequence, the damages and without which the damages would not have occurred. Action may be wrongful, but unless that action causes or contributes to cause the injury, that person cannot be "at fault."

When I say "contributes to cause the injury," I mean that there may be more than one cause of an injury; that is, there may be concurrent causes which combine to produce an injury.

Concurrent causes do not always occur simultaneously.

## INSTRUCTION NO. 5

## STIPULATIONS

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court. Since the parties have agreed, you should treat the following facts as having been proved:

1. On Friday, September 24, 2021, Cedric Lofton was 17 years old.
2. In the months prior to and leading up to September 24, Cedric Lofton was in foster care and residing with his foster father, Tanea Randolph, in Wichita, Kansas.
3. On September 23, Tanea Randolph drove Cedric Lofton to Comcare in Wichita for a mental health evaluation.
4. After Tanea Randolph and Cedric Lofton arrived at Comcare, but before they entered the facility, Cedric told Randolph that he thought people were trying to kill him and Lofton ran away from Randolph.
5. Tanea Randolph called the Wichita Police Department ("WPD") to report Cedric Lofton as a runaway.
6. Sometime around or after midnight in the early morning hours on September 24, Cedric Lofton returned to Randolph's residence.
7. When Cedric Lofton returned, Randolph called the foster care agency, the Kansas Department of Children and Families ("DCF"), who told him to call WPD and to not let Lofton back into the home.
8. Randolph called WPD and did not let Cedric Lofton into the home.

9. Officers Cory Bennett and Ryan O'Hare arrived first at Randolph's residence. WPD Officer Jordan Clayton arrived shortly thereafter.

10. Sergeant Tony Supancic also arrived on scene and was the supervising officer on scene.

11. Randolph told the WPD Officers that he wanted to get Cedric Lofton a mental health evaluation.

12. Officers Bennett and Clayton spoke with Lofton to try to get Cedric Lofton to go to Ascension Via Christi St. Joseph's Hospital in Wichita ("St. Joseph's Hospital") for a mental health evaluation.

13. Cedric Lofton refused to voluntarily go to St. Joseph's Hospital.

14. Sgt. Supancic directed the officers to take Cedric Lofton to transport him to St. Joseph's Hospital.

15. Cedric Lofton resisted WPD Officers' attempt to take him.

16. Cedric Lofton struggled with Officers Clayton, Bennett, O'Hare, and Sgt. Supancic.

17. Sergeant Supancic radioed for a WRAP restraint device to be brought to the scene.

18. Officers Amanda Darrow and John Knolla arrived on the scene with the WRAP Restraint device. Several officers placed Cedric Lofton in the WRAP Restraint device.

19. Sgt. Supancic determined that, during the struggle, Cedric Lofton had committed several counts of battery on law enforcement officers. He directed Cedric Lofton to be transported to the Sedgwick County Juvenile Intake and Assessment Center

("JIAC").

20. None of the WPD officers sought medical treatment as a result of the alleged battery.

21. Corrections Officer Jason Stepien was working as a Juvenile Intake Specialist at JIAC.

22. JIAC had no medical or mental health providers on site at the time Cedric Lofton entered JIAC and throughout the time he was there, until EMS arrived.

23. Cedric Lofton arrived at JIAC still in the WRAP Restraint system, accompanied by several WPD Officers. Cedric Lofton was placed in Holding Room #2 at JIAC.

24. WPD Officers removed Cedric Lofton from the WRAP Restraint and left him alone in Holding Room #2.

25. WPD Officers left JIAC, leaving Cedric Lofton and Stepien at JIAC. Cedric Lofton was still in Holding Room #2 at that time.

26. Stepien opened the door to Holding Room #2 to let Cedric Lofton out.

27. JIAC is located in the same building as the Sedgwick County Juvenile Detention Facility ("JDF").

28. Corrections Officer Brenton Newby was working at JDF.

29. Stepien and Newby physically moved Cedric Lofton to Holding Room #1.

30. Shortly after Stepien, Newby, and Cedric Lofton entered Holding Room #1, two JDF Corrections Supervisors—Karen Conklin and William Buckner—came over from JDF to assist Stepien and Newby.

31. Initially, Cedric Lofton was in the seated position.

32. Leg shackles were applied to Cedric Lofton.

33. Cedric Lofton was moved to the floor.

34. Cedric Lofton remained on the floor for somewhere between 35-40 minutes. Plaintiff and Defendants do not agree on the exact time in that range.

35. At some point, Stepien left the holding room and was replaced by JDF Corrections Officer Benito Mendoza.

36. Stepien left the room to call 911 and requested WPD return and transport Cedric Lofton to a medical provider.

37. After Stepien returned from calling 911, the JDF/JIAC Officers placed Cedric Lofton in handcuffs.

38. Cedric Lofton became unconscious at some point in Holding Room #1.

39. EMS arrived at JIAC thereafter and triaged Cedric Lofton as code blue (no pulse, no breathing), and attempted life-saving measures.

40. EMS transported Cedric Lofton from JIAC to Wesley Medical Center thereafter on September 24.

41. Cedric Lofton was pronounced dead on September 26 at Wesley Medical Center.

42. Stepien, Newby, Conklin, Buckner, and Mendoza were all acting under color of law when they interacted with Cedric Lofton at JIAC.

## INSTRUCTION NO. 6

## CLAIMS

Plaintiff's claims for Excessive Force and Failure to Intervene are brought under a federal statute, 42 U.S.C. § 1983, which provides that any person who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States, shall be liable to the injured party.

## INSTRUCTION NO. 7

### EXCESSIVE FORCE - ELEMENTS

Plaintiff claims that the Defendants used excessive force against Cedric Lofton. Plaintiff has separate claims against each of the five Defendants. To succeed on this claim against a Defendant, Plaintiff must prove by a preponderance of the evidence that the Defendant used unreasonable force against Cedric Lofton.

If you find that Plaintiff has proved this by a preponderance of the evidence as to one or more of the Defendants, then you must decide for Plaintiff, and go on to consider the question of damages. If, on the other hand, you find in favor of all of the Defendants, you will not consider the question of damages.

# INSTRUCTION NO. 8

## EXCESSIVE FORCE - REASONABLENESS

Plaintiff must prove by a preponderance of the evidence that Defendants used excessive force when restraining Cedric Lofton on September 24, 2021.

Under the Fourth Amendment, an officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. The Fourth Amendment only requires that officers use an objectively reasonable degree of force. An officer can act reasonably without using the least amount of force necessary, so long as the amount of force used was not excessive. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether any Defendant used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

(1) circumstances known to the officer at the time force was applied;

(2) whether the officer reasonably believed Cedric Lofton's actions placed the officer or others in the immediate vicinity in imminent danger of death or serious bodily harm;

(3) whether the officer reasonably believed they had obtained control of Cedric Lofton sufficient to take him out of the prone restraint or whether he continued to meaningfully resist control throughout the restraint;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) the extent of the injury inflicted;

(7) any effort made by the officers to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

(9) whether a reasonable officer on the scene without the benefit of hindsight would have used that much force under similar circumstances; and

(10) the availability of alternative methods to control Cedric Lofton.

You have heard some evidence concerning training. The Defendants' training, or lack of training, is not relevant to your deliberations. In deciding whether the Defendants used excessive force, you must judge the reasonableness of their conduct from the perspective of a reasonable officer, as set forth in this instruction.

## INSTRUCTION NO. 9

## FAILURE TO INTERVENE - ELEMENTS

To succeed on his Failure to Intervene claim against any of the five Defendants, Plaintiff must prove each of the following things by a preponderance of the evidence:

1. A Defendant used excessive force against Cedric Lofton;
2. Another Defendant knew or had reason to know excessive force was being used against Cedric Lofton;
3. That Defendant had a realistic opportunity to intervene but failed to do so; and
4. The Defendant's failure to intervene caused Cedric Lofton to suffer harm.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence as to one or more of the Defendants, then you must decide for Plaintiff, and go on to consider the question of damages.

# INSTRUCTION NO. 10

## DAMAGES: COMPENSATORY

If you find in favor of Plaintiff on any of his Excessive Force or Failure to Intervene claims as to any Defendant, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find that Cedric Lofton sustained as a result of the Defendant's excessive force or failure to intervene.

Plaintiff must prove damages by a preponderance of the evidence. The damages that you award must be fair compensation for all of Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize Defendants. You should not award compensatory damages for speculative injuries, but only for those injuries that Cedric Lofton had actually suffered or that he would be reasonably likely to suffer in the future.

You should consider the following types of compensatory damages, and no others:

a. The physical, mental, and emotional pain and suffering that Cedric Lofton experienced before his death. No evidence of the dollar value of physical, mental, and emotional pain and suffering needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors;

b. Cedric Lofton's loss of the capacity to carry on and enjoy his life's activities in a way he would have done had he lived; and

c. Cedric Lofton's loss of earnings based upon the probable duration of his life had this incident not occurred.

# INSTRUCTION NO. 11

## EVIDENCE—DEFINED

You may consider as evidence everything that was admitted during trial such as witness testimony in person or by deposition, an article or document marked as an exhibit, or any other matter admitted into evidence such as an admission, agreement, or stipulation. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

A "stipulation" exists when the attorneys for both parties agree that a particular fact exists. You must accept such a stipulation as true. Stipulations in this case are set forth at Instruction 5.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

You are permitted to draw reasonable inferences based on your experience, if reason and common sense lead you to draw particular conclusions based on the evidence. But such inferences must arise from the evidence that you will see and hear in court.

During the trial, I may not have let you hear the answers to some of the questions that the lawyers ask or that you as jurors ask. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You may thus consider only the evidence offered in this courtroom, and these instructions I am giving you, and should not rely on any other facts or authority. Specifically, you should not do any computer research on your own about any matters relating to this case, you should not look up words for definitions different or beyond what I give you here.

# INSTRUCTION NO. 12

## RULINGS—EVIDENCE FOR LIMITED PURPOSE—REDACTIONS

At times during trial, I ruled on the attorneys' objections to admitting certain items into evidence. Questions relating to the admissibility of evidence are solely questions of law for me. You must not concern yourselves with the reasons for my rulings and do not draw any inferences from my rulings. Consider only the evidence admitted.

**INSTRUCTION NO. 13**

**DEPOSITION TESTIMONY**

During the trial, certain testimony was presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath or on a videotape. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

# INSTRUCTION NO. 14

## CREDIBILITY OF WITNESSES

Although you must consider all of the evidence in this case, this does not mean that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.

In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the plaintiff or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? How do you assess the witness's manner while testifying, and the witness's candor, fairness and intelligence?

You may, in short, accept or reject the testimony of any witness in whole or in part.

When weighing the conflicting testimony between witnesses, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

In addition, while you must consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions

which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

## INSTRUCTION NO. 15

### IMPEACHMENT AND CREDIBILITY

You are to determine the weight and credit to give each witness' testimony. You have a right to use common knowledge and experience in evaluating witnesses' testimony.

A witness may be discredited or "impeached" by contradictory evidence, or by evidence that at some other time the witness has made an oral or written statement or testified in a deposition in a manner which is inconsistent with the witness' present testimony, if on a matter which is material to the issues.

You may consider such evidence insofar as it may impact the witness' credibility— that is, in deciding the weight and credit to be given to that witness' testimony.

If you believe that any witness has been so impeached, then it is your exclusive function to give the testimony of that witness such credibility or weight, if any, you think it deserves.

## INSTRUCTION NO. 16

### DIRECT AND CIRCUMSTANTIAL EVIDENCE—INFERENCES

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

## INSTRUCTION NO. 17

## DEMONSTRATIVE EXHIBITS

Certain exhibits have been shown to you over the course of the trial that are illustrations. We call these types of exhibits demonstrative exhibits. Demonstrative exhibits are a party's depiction, picture, model, or something to describe what's involved in the trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstratives are not evidence, but the witness' testimony concerning the use of a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

**INSTRUCTION NO. 18**

**EXPERT WITNESSES**

Certain testimony has been given in this case by experts—that is, by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general. The law permits such persons to give their opinions regarding such matters, although you are not required to accept such opinions. The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances, and its weigh and value are questions for you.

## INSTRUCTION NO. 19

## EQUAL BEFORE THE LAW

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. All persons stand equal before the law and are to be dealt with as equals in a court of justice.

## INSTRUCTION NO. 20

## NO INFERENCE FROM DAMAGES INSTRUCTION

You should not consider the fact that I have instructed you about the proper measure of damages as an indication of my views regarding which party is entitled to your verdict in this case. That is entirely for you, the jury, to decide. I am giving you instructions about damages solely to provide you with guidance if you should find in favor of Plaintiff.

## INSTRUCTION NO. 21

## NOTE-TAKING

The Court has permitted you to take notes during this trial, if you want. If you did take notes, remember that any notes that you take are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. Your notes are not evidence.

If you did not take notes, you should not be influenced by the notes of other jurors but should rely on your independent recollection of the evidence. Even if you did take notes, you should not be unduly influenced by the notes of other jurors if they differ from yours. There can be a tendency to attach too much importance to what someone has written down, but notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony. Remember, something that may not have seemed important at the time, and thus was not written down in your notes, may have taken on greater importance later in the trial in light of all the evidence presented, the Court's instructions on the law, and the final arguments.

Therefore, don't attach undue importance to your notes, or be unduly influenced by another juror's notes. Your notes are not evidence, and are by no means a complete summary of the trial. They are only an aid to your memory, and it is your collective memory that is your greatest asset in deciding this case.

## INSTRUCTION NO. 22

## CONCLUSION OF PRELIMINARY INSTRUCTIONS

Neither in these instructions, nor in any ruling, action or remark that I made during the course of this trial, did I intend to interpose any opinion or suggestion as to how I would resolve any of the issues of this case. If I made any remark that you believe indicates how I would decide this case, I instruct you to disregard such remark.

You will now hear closing arguments by counsel. Following closing arguments, I will have a few remaining instructions to give you concerning your deliberations.

## INSTRUCTION NO. 23

## DELIBERATIONS

Your verdict must represent the considered judgment of each juror. In order to return a verdict, each juror must agree upon the verdict and your verdict must be unanimous.

As jurors, you have a duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violating your individual judgment. Each of you must decide the case for yourself, but do so only after considering the evidence impartially with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you become convinced that it is wrong. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

# INSTRUCTION NO. 24

## DELIBERATIONS AS A BODY

A suggestion by the Court—technically not an instruction upon the law—may assist your deliberations. The attitude of jurors at the outset of and during their deliberations is important. It is seldom productive for a juror, immediately upon entering the jury room, to make an emphatic expression of his or her opinion upon the case or to announce a determination to stand for a certain verdict. The reason is obvious: we are all human and it is difficult to recede from a position once definitely stated, even though later convinced it is unsound.

Jurors are selected for the purpose of doing justice. This presupposes and requires deliberation—counseling together in an effort to agree. Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving the substantial rights of the parties. You will make a definite contribution to efficient administration of justice when and if you arrive at a just and proper verdict under the evidence which has been admitted. No one can ask more and you will not be satisfied to do less.

**INSTRUCTION NO. 25**

**DELIBERATION PROCEDURE**

When you retire to the jury room, you should first select one of you as the foreperson to preside over your deliberations, speak for the jury when in court, and sign the verdict.

The next thing you should do is read the Court's instructions. One of the purposes of the instructions is to guide your deliberations. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict is based, but for your verdict to be valid, you must follow the Court's instructions throughout your deliberations. Remember, you are judges of the facts, but you are bound by your oath to follow the law as stated in the instructions. Your verdict must be founded entirely upon the evidence admitted and the law that I have given to you in these instructions.

Your verdict must be unanimous. A form of verdict has been prepared for your convenience. Once you reach a unanimous verdict, the foreperson should complete the verdict form pursuant to its instructions, date and sign it, and then notify my clerk that you have reached a verdict. The foreperson will carry the completed verdict into the courtroom and, after we have returned to the courtroom, hand it to the clerk when instructed to do so.

## INSTRUCTION NO. 26

## COMMUNICATIONS WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, please reduce your message or question to writing and give the note to my clerk, who, in turn, will pass the note along to me. The note must be signed by your foreperson or by one or more of you. I will then respond as promptly as possible, either in writing, or by having you return to the courtroom so that I can address you orally. You should never, in any written note that you might send, or in any comments, state or specify your numerical division at any time, until you have reached a unanimous verdict.

During your deliberations, you must also not communicate with, or provide any information to, anyone about this case by any means. None of you should ever attempt to communicate with me about the merits of the case in any way other than by a signed writing. I will not communicate with any of you on any subject involving the merits of the case other than in writing, or orally here in open court.

2/2/26
Date

Eric F. Melgren
United States District Judge